STATE, Respondent, v. GERARD, Appellant.

*No. State 27.   Argued January 4, 1973.—Decided March 27, 1973.*
(Also reported in 205 N. W. 2d 374.)

612

614

615

616

For the appellant there were briefs by *Peter W. Bunde,* attorney, and *T. L. Tolan, Jr.,* and *Brady, Tyrrell,*

*Cotter & Cutler* of counsel, all of Milwaukee, and oral argument by *Mr. Bunde.*

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J.   The defendant first contends that the probation revocation hearing did not comport with due process of law because the trial court denied him the opportunity to cross-examine the opposing witness. We find no error in this respect. The basic requirements of due process of law and fairness require that a factual hearing be held to determine the grounds of revocation. This procedure permits the defendant to be informed of his probation violations, confront his adversary, and to be heard if he so desires. *State ex rel. Johnson v. Cady* (1971), 50 Wis. 2d 540, 185 N. W. 2d 306, and *Hahn v. Burke* (7th Cir. 1970), 430 Fed. 2d 100. The sixth amendment right of confrontation also requires the opportunity to cross-examine the witnesses against him. *Pointer v. Texas* (1965), 380 U. S. 400, 85 Sup. Ct. 1065, 13 L. Ed. 2d 923. In this case these mandates were met. The defendant was given adequate notice of the hearing. The court appointed counsel to represent defendant due to his indigency. The defendant and his attorney appeared at the hearing. A factual hearing was held to determine if the conditions of probation were violated. The defendant, with counsel, confronted his accuser. The court asked the defendant and counsel if there was anything they wished to say as to why probation should not be revoked. The court did not deny defendant or counsel the right to cross-examine any witness; rather, defendant, with counsel, had the opportunity to cross-examine but did not and thereby waived that right. After the probation officer was questioned, the court called the defendant's attorney

who, after making a few other remarks, stated: "As to any other features, I have no comment." The court then called the defendant and asked if there was anything he would like to say. Both defendant and counsel clearly had the opportunity to cross-examine the probation officer. Since neither pursued that right they thereby waived it and cannot now complain.

The defendant also claims that the court erred when it allowed the probation officer, who was not under oath, to testify against him. This was not error, nor did defendant, with counsel, ever object until now on appeal. The revocation hearing need not be a formal trial-type hearing and the technical rules of evidence need not be observed. *State ex rel. Johnson v. Cady, supra.* The revocation hearing, even though before the judge in this instance, is not a trial in the traditional sense. The issue here is not a determination of the guilt or innocence of the defendant but rather a hearing to determine whether the defendant has violated the conditions of his probation. Although the probationer must be afforded a due-process-type of hearing, all of the technical rules of evidence need not be observed. The trial judge, in the exercise of his discretion, can accept or reject the information offered as reliable or unreliable in making a proper determination.

As his second major claim of error, the defendant contends the trial court violated his rights of equal protection and due process under the fourteenth amendment to the United States Constitution because it required the defendant, as a condition of probation, to make restitution of more than $30,000 for crimes which were "read in" the record, but for which he was not convicted.

Defendant's right to due process of law was not violated. Sec. 973.09, Stats., gives the court the discretion to stay the sentence, place the defendant on probation, and impose any conditions which appear reasonable and

appropriate. Restitution is a permissible condition for probation. *State v. Garner* [1] (1972), 54 Wis. 2d 100, 194 N. W. 2d 649. Trial courts often required as a condition of probation that the defendant make restitution for all property or monetary losses caused by the criminal acts of the defendant which have been brought to the court's attention, although the defendant has been convicted or pleaded guilty only to one of them. In such situations, when the amount of the loss is determined on the face of the record or by defendant's admission, no problem arises as to the amount of restitution which can be made a condition of probation. *State v. Scherr* (1960), 9 Wis. 2d 418, 101 N. W. 2d 77. He could not be specifically sentenced for any of the "read ins," but restitution for the total amount can be ordered as a condition of probation.

In this case the amount of restitution can be determined from the record as to the acts not charged in the information. The burglaries perpetrated and the amounts lost and not recovered were specifically set forth in the record with detail and admitted by defendant. The defendant should not now be heard to complain. Probation is not a matter of right, but rather a grace or privilege.[2] The defendant cannot dictate the terms of probation and should not be allowed to strike a bargain with the prosecutor or the court on the matter of restitution as a condition of probation. *State v. Scherr, supra.*

The defendant, of his own free will, wanted the twenty uncharged offenses "read in" because the district attorney promised not to prosecute those offenses, and be-

---

[1] The ABA *Standards Relating to Probation* which this court adopted in *Garner, supra,* state in standard 3.2 (c) that, "Conditions may appropriately deal with matters such as the following: . . . (viii) making restitution of the fruits of the crime or reparation for loss or damage caused thereby." And "(d) Conditions requiring payment of fines, restitution, . . ."

[2] *State v. Welkos* (1961), 14 Wis. 2d 186, 109 N. W. 2d 889.

cause the defendant wanted to clear his record. The court, on a number of occasions, warned the defendant that it would consider these read ins when sentencing. The court also stated that because the defendant wanted a chance on probation and wanted the court to give this consideration, the court expected in return the defendant's cooperation. After the twenty uncharged offenses were read in, the court again inquired as to the defendant's disposition, efficacy and propriety of the read ins. The following dialogue took place:

"*The Court:* Have the defendant walk forward.

"Ronald Gerard, did you admit all those other said offenses to the officers freely and voluntarily?

"*Defendant:* Yes.

"*The Court:* Were any threats or any promises made by anyone, any police officer or by any law enforcement officer or by anyone involved in this case in any manner, shape or form to get you to admit those offenses?

"*Defendant:* No.

"*The Court:* Why did you admit them?

"*Defendant:* Because I wanted to get everything off the books so I am not any more involved in anything.

"*The Court:* Is there anything that you want to ask him, Mr. Klinkowitz, about those other admissions?

"*Mr. Klinkowitz:* Was any force or coercion applied to you or your person in order to get you to make these admissions, sir?

"*Defendant:* No.

"*Mr. Klinkowitz:* Was your attorney with you when you made the admissions?

"*Defendant:* Yes.

"*Mr. Klinkowitz:* He was with you at all times and with all the interviews with the various detectives?

"*Defendant:* Yes.

"*Mr. Klinkowitz:* He advised you to make the admissions to clean your record?

"*Defendant:* Yes.

"*The Court:* Are there any other outstanding matters which you wish to bring to this court's attention at this time?

"*Defendant:* Everything that has been brought out is everything I am involved in.

*"Mr. Klinkowitz:* I am satisfied, your honor.
*"The Court:* Mr. Dinerstein, is there anything that you want to ask him concerning that aspect only?
*"Mr. Dinerstein:* No."

The court then imposed sentence and ordered full and complete restitution at $150 per month.

The defendant did not object to these terms and conditions of probation at the trial nor at the probation revocation hearing. In fact, defendant expressed his desire for probation on numerous occasions. Not until almost two years later did defendant complain by filing a motion for postconviction relief. Prior to this time he indicated he was willing to comply with its terms, and led the court to so believe.

Probation was revoked because defendant failed to even attempt to comply with its terms. He moved from address to address and did not inform the probation officer. He failed to report to his officer as ordered. He did not make any attempt to pay court costs and disbursements, nor make restitution. He did not comply with any of the major conditions imposed by the court.

The defendant argues that the court never ascertained the defendant's ability to pay, and the court costs, disbursements and restitution are excessive. The court did ascertain the defendant's ability to pay. True, at the time of sentencing and imposing the conditions of probation the defendant was indigent, but the defendant informed the court that if put on probation he was confident that he could again obtain employment. This led the court to believe he would have suitable employment, would no longer be indigent, and therefore would have the ability to pay.

Defendant contends that notwithstanding all of this, the conditions of probation are still unconstitutional because they invidiously discriminate against him thereby denying him equal protection under the law. In support of this proposition defendant cites *In re Antazo*

(1970), 3 Cal. 3d 100, 89 Cal. Rptr. 255, 473 Pac. 2d 999. We do not believe the case provides such support. In *Antazo,* the indigent petitioner was confined in the county jail pursuant to a court probation order requiring him to pay, as a condition of probation, a fine in the amount of $2,500, plus a penalty assessment of $625 or, in lieu of payment thereof, to be imprisoned in the county jail one day for each $10 of the unpaid amount. His codefendant paid the amount and was released. The petitioner was unable to pay and was imprisoned. The petitioner there contended that his imprisonment due solely to his indigency to pay such costs constitutes invidious discrimination under the equal protection clause of the fourteenth amendment. In essence, petitioner was incarcerated for nonpayment of a fine. The *Antazo* court rightly held that such imprisonment because of one's indigency violated the fourteenth amendment because it is invidious discrimination on the basis of wealth. But the court went on to state in *Antazo,* at page 116, that:

> ". . . we do not hold that the imposition upon an indigent offender of a fine and penalty assessment, either as a sentence or as a condition of probation, constitutes of necessity in all instances a violation of the equal protection clause. Depending upon the circumstances of the particular case and the condition of the individual offender, there are a variety of ways in which the state may fine the indigent offender, as alternatives to imprisonment, without offending the command of equal protection. . . Rather, our holding is simply that an indigent who would pay his fine if he could, must be given an option comparable to an offender who is not indigent. When the indigent offender refuses to avail himself of such alternatives at the inception, or defaults or otherwise fails to meet the conditions of the particular alternative which is offered him without a showing of reasonable excuse, the indigent offender becomes in the eyes of the court exactly the same as the contumacious offender who is not indigent. When either of these

conditions obtain the offender's *indigency* ceases to be dispositive and he may, consistently with the mandate of the equal protection clause, be relegated to 'working out' his fine by imprisonment."

The case at hand does not involve discrimination based upon wealth, nor is this a case where the indigent defendant could not pay such costs and thereby had to serve an X amount of time in jail at a dollar a day. Rather, this is a case where the defendant led the court to believe he would be working and supporting his family if allowed to be put on probation. He was therefore given an option comparable to an offender who is not indigent—that is, jail or probation. While on probation the defendant had several jobs and was no longer indigent. The first was at Ampco Metal with a $90 per week take-home pay. The second was at Geuder-Paeschke and Frey Company with a $120 a week take-home pay. At this point in time he had the ability to at least make some payments. He refused to pay and did not pay anything—not even a nominal amount. In this case, when the defendant had the ability to pay at least something and refused to avail himself of his alternatives, or refused to even attempt to comply with probation conditions without a showing of reasonable excuse, he became in the eyes of the law exactly the same as the contumacious offender who is not indigent. His indigency ceases to be dispositive of the issue. *In re Antazo, supra.* His right to equal protection under the law has not been violated. He was given a fair chance. His indigency did not cause his probation to be revoked, but rather his own refusal to at least attempt compliance. His contumacious actions caused revocation and he knew of this possibility.

The defendant contends his thirteenth amendment right against involuntary servitude under the United States Constitution was violated when the court revoked proba-

tion and imposed sentence for failing to pay all court costs, disbursements and failing to make restitution.

The defendant's right under the thirteenth amendment was not violated. Probation was revoked for failure to comply with its terms and not for failure to pay a debt. Revocation of probation is a matter of judicial discretion and the court had a substantial basis in fact to support its determination—that is, the conditions of probation had been violated. *Davis v. State* (1971), 52 Wis. 2d 697, 190 N. W. 2d 890, and *Hughes v. State* (1965), 28 Wis. 2d 665, 137 N. W. 2d 439. Probation was revoked not just because defendant failed to pay court costs, disbursements or make restitution, but also because he failed to support his family, report to his probation officer, would not notify the department when he changed his address, and failed to keep any employment.

At no time during the probationary period did defendant claim that he could not meet the terms and conditions of probation, nor that he did not have the ability to even make some payments. Violating one's probation does not constitute involuntary servitude. Defendant is simply now serving out a sentence that was previously imposed and stayed upon conditions which he violated.

On December 10, 1971, at a hearing on the postconviction motion, the defendant for the first time objected to the probation condition of restitution of $30,000. He complains that several others were involved in the various crimes that resulted in the loss of $30,000 to the victims and that he cannot pay back the $30,000.

The defendant participated in all of the more than 20 crimes in which property in excess of $30,000 was stolen or illegally obtained. As a participant he was a principal and can be rightfully charged with responsibility for the entire loss. Further, if it was his intention to make an equitable argument he did not give the

trial court any factual basis to determine how much of the money or property he, personally, or any of the others received.

His complaint that he cannot repay the $30,000 as a probation condition is premature for the reason that he is not now on probation—he is incarcerated, serving a part of his sentence.

A portion of the statute quoted above provides: "Prior to the expiration of any probation period, the court may for cause by order . . . modify the terms and conditions thereof." [3]

The condition of probation imposed here is that the defendant pay the sum of $150 per month toward restitution. After the defendant regains his probationary status, if he can show cause why he should not be required to comply with the condition, the court can for cause shown exercise its discretion and modify or relieve him from it. Further, the court can, at any subsequent probation revocation hearing, if such comes to pass, reconsider the provision for restitution and within the exercise of proper discretion modify it and its effect on the revocation of probation. We believe that the "cause" contemplated by the statute includes impossibility, undue hardship and probably other causes.

Counsel for the defendant contends that a condition of probation requiring the repayment of attorney's fees paid by the county on behalf of an indigent in the defense of a criminal case is unconstitutional under the fifth and sixth amendments of the United States Constitution.

There is no question but that an indigent defendant is entitled to appointed counsel at all significant stages of the criminal trial process.[4] The defendant does not

---

[3] Sec. 973.09 (3), Stats.

[4] *Gideon v. Wainwright* (1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. 2d 799, 93 A. L. R. 2d 733; *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694; sec. 970.02 (6), Stats.

claim that he has been denied the right to counsel—the record reveals that he has been represented by court-appointed counsel at all stages. His claim is that knowledge that he might be required to repay the fees allowed to appointed counsel [5] may have a chilling effect upon his exercise of his right to counsel and his waiver of a jury trial because of the possibility of repayment of attorney's fees. He does not claim this possibility had any chilling effect upon him, but as a constitutional defense it might have a chilling effect upon others who in the future will face similar situations.

We are not here dealing with cases that result in findings of not guilty or determinations of guilty where sentence is imposed, incarceration ordered, and payment of attorney's fees is not imposed,[6] but only those cases where as a condition of probation a sentencing court may, as a matter of discretion, require the repayment of attorney's fees as a condition of probation.

Not only is the repayment of counsel fees as a probation condition discretionary in the first instance, but it can be re-examined during the term of probation or at a revocation hearing in the same manner as a condition of restitution discussed above.

If the repayment of counsel fees is relied upon as the sole basis or a principal basis for revocation of probation, and it is shown that such payment is impossible or constitutes an undue hardship, the condition should be modified or completely withdrawn. If, on the other hand, the probationer is employed at a wage where repayment of counsel fees will not constitute an undue hardship and he refuses or makes little or no effort to pay, this failure can be regarded as contumacious and enforced.

We are of the opinion that our statutory provision for repayment of costs, including counsel fees with its

---

[5] *See* secs. 973.09, 973.06 and 973.07, Stats.

[6] But *see* sec. 256.66, Stats.

discretionary provisions, is not unconstitutional, nor is its application if administered in the manner indicated above.

*By the Court.*—Order affirmed.

WILKIE, J. *(concurring)*. My disagreement with the majority is limited to the question of whether it is constitutional to require a convicted indigent defendant, as a condition of his probation, to make reimbursement of the cost of attorney's fees where legal services have been furnished to him because of his indigency and as guaranteed by both state [1] and federal [2] constitutions.

Here, this condition was imposed pursuant to sec. 973.09 (1), Stats., which authorizes the imposition of "any conditions which appear to be reasonable and appropriate" as terms of probation; [3] sec. 973.06 (1) (e), which includes as costs taxable to a criminal defendant "[a]ttorney fees payable to the defense attorney by the county;" [4] and this court's decision in *State v. Welkos,*[5]

---

[1] Wis. Const., art. I, sec. 7.

[2] U. S. Const., sixth amendment, made applicable to states by the fourteenth amendment, *see Gideon v. Wainwright, infra,* footnote 10.

[3] Sec. 973.09 (1), Stats., provides: "(1) When a person is convicted of a crime, the court may, by order, withhold sentence or impose sentence and stay its execution, and in either case place him on probation to the department for a stated period, stating in the order the reasons therefor, *and may impose any conditions which appear to be reasonable and appropriate.* The period of probation may be made consecutive to a sentence on a different charge, whether imposed at the same time or previously." (Emphasis supplied.)

[4] Sec. 973.06 (1) (e), Stats., provides: "(1) The costs taxable against the defendant shall consist of the following items and no others: . . . (e) Attorney fees payable to the defense attorney by the county."

[5] (1961), 14 Wis. 2d 186, 192, 109 N. W. 2d 889: "We, therefore, determine that there existed no statutory bar to the circuit court's requiring the defendant to pay as costs of prosecution the expense of the special prosecutor's fees and the costs of the audit as a condition to the defendant's probation."

which held that the "costs of prosecution" are chargeable under the latter costs statute (then sec. 959.055) as a probationary condition under then sec. 57.01 (1). The majority hold the Wisconsin statutes authorizing this practice constitutional. I would not.

The Wisconsin requirement for providing charged indigent criminal defendants with counsel at public expense, was effectuated by enabling legislation in the late 1850's,[6] and this court was one of the earliest in the United States [7] "to recognize the necessity for compensating attorneys who represented indigents in criminal proceedings in order to guarantee the defendant fully adequate representation." [8] The federal constitutional right to legal counsel under the sixth amendment was not recognized by the United States Supreme Court until *Powell v. Alabama.*[9] That right was made applicable to states by the fourteenth amendment in *Gideon v. Wainwright* [10] and applied to felonies (crimes with sentences of one year or more). In *Argersinger v. Hamlin* [11] the right was extended in 1972 to indigent persons charged with misdemeanors (crimes with sentences of less than one year).

Nearly four years ago the Supreme Court of California considered the constitutionality of imposing as a condition of probation the requirement that a convicted indigent criminal defendant reimburse the California county which had furnished him with court-appointed counsel

[6] Revised Stats. 1858, ch. 163, sec. 2. *See also: State v. Beals* (1971), 52 Wis. 2d 599, 610, 191 N. W. 2d 221.

[7] *See:* Annot. (1941), 130 A. L. R. 1439, 1450; *Carpenter v. Dane County* (1859), 9 Wis. 249 (*274).

[8] *State v. Beals, supra,* footnote 6, at page 610, citing *Carpenter v. Dane County, supra,* footnote 7.

[9] (1932), 287 U. S. 45, 53 Sup. Ct. 55, 77 L. Ed. 158.

[10] (1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. 2d 799.

[11] (1972), 407 U. S. 25, 92 Sup. Ct. 2006, 32 L. Ed. 2d 530.

in his criminal proceedings.[12] The supreme court speaking through Mr. Justice LOUIS H. BURKE in a unanimous decision declared this practice unconstitutional, saying:

". . . The government is without constitutional authority to impose a predetermined condition on the exercise of a constitutional right or penalize in some manner its use." [13]

There, as here, there was no indication in the record that the defendant was discouraged from exercising her constitutional right to counsel because there, as here, the defendant requested and received counsel. Yet the California Supreme Court declared "[t]he fact that such knowledge might have deterred her, and could well deter others, gives rise to our concern as to the validity of such a condition of probation." [14]

In other words the practice is invalid because of the chilling effect it has upon the exercise of a constitutional right. This is a well-established doctrine that is traceable to the United States Supreme Court decision in *United States v. Jackson,* wherein the high court invalidated as an unconstitutional infringement of the fifth amendment right to plead not guilty, and the sixth amendment right to demand a jury trial, a federal statute which provided the death penalty under the Federal Kidnaping Act could only be imposed by jury verdict.[15] The court stated:

". . . If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional." [16]

[12] *In re Allen* (1969), 71 Cal. 2d 388, 78 Cal. Rptr. 207, 455 Pac. 2d 143.

[13] *Id.* at page 391.

[14] *Id.*

[15] (1968), 390 U. S. 570, 88 Sup. Ct. 1209, 20 L. Ed. 2d 138. *See also:* 18 U. S. Code, sec. 1201 (a) (1964).

[16] *United States v. Jackson, supra,* footnote 15, at page 581.

That the motives of Congress may have been to lessen the number of instances wherein capital punishment was imposed was irrelevant. The court stated:

". . . Whatever might be said of Congress' objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. . . . The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive." [17]

A further constitutional objection I would find in this practice of imposing payment of defense attorney fees paid by the county as a condition of probation, involves the adequacy of waiver of one's right to counsel. There was no waiver here since defendant requested and received service of counsel.

In *Johnson v. Zerbst* [18] it was held:

"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused."

I seriously question whether there has been a valid waiver of the right to counsel in an attempted waiver by an indigent adult of his right to counsel solely on the grounds that he did not want to be later forced to reimburse the county for such expenses out of already distressed family resources. Indeed, it was recently held by the Supreme Court of California in *In re H.*, that juvenile courts should not permit minors of indigent

[17] *Id.* at page 582. *See also: Strange v. James* (D. C. Kansas 1971), 323 Fed. Supp. 1230, 1232, 1233.
[18] (1938), 304 U. S. 458, 465, 58 Sup. Ct. 1019, 82 L. Ed. 1461. *See also: Comment, Reimbursement of Defense Costs as a Condition of Probation for Indigents,* 67 Mich. L. Rev. (1969), 1404, 1415, 1416.

parents to waive their right to appointed counsel "if the circumstances indicate to the court that such extraneous and improper factors are substantially influencing the minor's decision." [19]

I see other constitutional objections to the practice which the majority approve.

Parolees, as distinguished from probationers, are not required, under pain of parole revocation, to reimburse the county for the costs of providing defense services.[20] Since no indigent convicted defendant obviously can start to repay the costs of counsel fees until he is out of prison, on parole or probation, it does not appear that the minimal requirements of the equal protection clause have been met. In *State ex rel. Garner v. Gray*,[21] this court held that where there is a distinction between classes, that distinction must have some reasonable basis in order not to violate the constitutional right of equal protection. I can find no rational basis for requiring probationers to repay the costs of their defense and yet not require such repayment of parolees.

I have spelled out some of the constitutional infirmities with the reimbursement for counsel fees which this court today validates.[22] These reasons underlie the

[19] (1970), 2 Cal. 3d 513, 525, 86 Cal. Rptr. 76, 83, 468 Pac. 2d 204.

[20] Compare sec. 57.06, Stats. (Paroles from state prisons and house of correction), with sec. 973.06 (1) (e) (Costs of attorney's fees), and sec. 973.09 (1) (Probation), along with *State v. Welkos, supra,* footnote 5 and text.

[21] (1972), 55 Wis. 2d 574, 586, 587, 201 N. W. 2d 163. *See also: Baxstrom v. Herold* (1966), 383 U. S. 107, 111, 86 Sup. Ct. 760, 15 L. Ed. 2d 620; *Humphrey v. Cady* (1972), 405 U. S. 504, 512, 92 Sup. Ct. 1048, 31 L. Ed. 2d 394.

[22] Whether a violation of the thirteenth amendment (prohibiting imprisonment which is not punishment for a crime) is involved by imprisonment for the nonpayment of defense attorney's fees in a criminal case has been commented upon recently by one appellate court. In *Wright v. Matthews* (1968), 209 Va. 246, 163 S. E. 2d 158, the Supreme Court of Appeals of Virginia held

American Bar Association's refusal to countenance such practice. The Minimum Standards for Criminal Justice *Relating to Providing Defense Services* provide:

"6.4 Reimbursement.

"Reimbursement of counsel or the organization or governmental unit providing counsel should not be required, except on the ground of fraud in obtaining the determination of eligibility." [23]

A similar recommendation was very recently made in Wisconsin by the Citizens Study Committee on Judicial Organization. As well as pointing to constitutional objections, the report suggests such reimbursement probably hinders rehabilitation. The committee recommendation is as follows:

"Wisconsin Statute Sec. 973.09, permitting the judge to impose any 'reasonable and appropriate' conditions as part of probation, should be amended to clearly prohibit the repayment of attorney's fees as a condition of probation for indigent defendants." [24]

Interestingly, the committee also recommends the repeal of sec. 256.66, Stats., which permits a county to bring civil action against an indigent defendant to recover counsel costs, and also the amending of sec. 973.06, to prohibit the imposition of those costs against qualified indigents.[25]

I would modify the order appealed from only insofar as the probation revocation was based on the violation of the one condition of defendant's probation which in-

that payment of court costs is not punishment for a crime as is, for example, a fine, and therefore violates the thirteenth amendment.

[23] American Bar Association Project on Minimum Standards for Criminal Justice, *Standards Relating to Providing Defense Services,* sec. 6.4 (Approved draft, 1968).

[24] Report of *Citizens Study Committee on Judicial Organization,* sec. 6, at page 167 (1973).

[25] *Id.,* sec. 5, at pages 166, 167.

validly imposed on defendant the obligation to reimburse the county for counsel fees. This condition is severable from and does not affect the other (valid) conditions of the probation.

I am authorized to state that Mr. Chief Justice HALLOWS and Mr. Justice HEFFERNAN join in this opinion.