**Robert H. HOUSTON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. 0–78–111.**

Court of Criminal Appeals of Oklahoma.

Feb. 12, 1979.

Frank Muret, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Mary Kathleen Rhodes, Asst. Atty. Gen., for appellee.

OPINION

CORNISH, Presiding Judge:

Robert H. Houston was charged with the offense of Obtaining Merchandise by Means and Use of a False and Bogus Check. Upon a plea of guilty, the appellant was given a three (3) year suspended sentence on March 30, 1976. One of the conditions of the suspended sentence was the payment of court costs, restitution and probation fees, which

14. *Millard v. Smith*, 30 Colo.App. 466, 495 P.2d 234 (1972).

were to be paid in $200.00 monthly installments. Thereafter, on June 13, 1977, the Oklahoma County District Attorney filed an application to revoke the appellant's suspended sentence. At the revocation hearing on September 8, 1977, the trial court sustained the application to revoke the suspended sentence.

The State's witness, Gertie Hamilton, an officer with the Department of Corrections, Division of Probation and Parole, testified the appellant was under her supervision while serving the suspended sentence. She said he met all the terms of his probation with the exception of paying court costs, restitution and probation fees. Ms. Hamilton stated the appellant told her he had applied for two jobs, but had not been employed during his probationary period. The State then rested.

The appellant testified in his own behalf that he was divorced, lived with his mother, who provided him with room and board, did not receive welfare or unemployment, and had been unemployed for 15 months. The appellant further testified he applied for a job at the Tiffany Inn and the Central Printing Company, but was unsuccessful. He stated he was aware of the terms of his suspended sentence, but had not made any payments. The appellant, who was previously employed by Dayton Tire and Rubber Company for several years, testified he "scruffled a living" and made money occasionally by being staked in poker games, but had difficulty obtaining gainful employment at the age of 51.

The single assignment of error advanced by the appellant is that he was denied equal protection of the law by the revocation of his suspended sentence. He contends he was unable to pay restitution, court costs and probation fees, and argues that imprisonment solely because he is indigent constitutes an invidious discrimination on the basis of wealth, in violation of the Equal Protection Clause of the Fourteenth Amendment.

The appellant assumes, as a basis for his assignment of error, that he was imprisoned solely because he is indigent. This is not entirely consistent with the record. Referring to the appellant, the trial judge stated, "I only get from him the idea that he has no intention really of trying to work." The trier of fact then concluded that the appellant was a person unwilling to put himself in a position to pay restitution rather than someone willing yet unable to pay.

In support of his argument, the appellant attempts to trace the development of the law on the denial of equal protection of indigents. He relies on *Rutledge v. Turner,* Okl.Cr., 495 P.2d 119 (1972), where this Court followed opinions of the United States Supreme Court in adopting rules concerning imprisonment for nonpayment of fines and costs. Thus, the application of Rules 5.5 and 5.6 of the Rules of this Court, 22 O.S.Supp.1978, ch. 18, App., becomes particularly important in the case at bar. Rule 5.5 provides:

"If the defendant fails to make an installment payment when due, he must be given an opportunity to be heard as to his refusal or neglect to pay the installment when due. If no satisfactory explanation is given, the defendant may then be imprisoned. If, because of exigent circumstances or misfortune, defendant is unable to make payment of a particular installment when due, he should be given further opportunity to satisfy the fine and/or costs, this being with the discretion of the court, to be governed by the facts and circumstances of each particular case."

Rule 5.6 provides:

"In the event the defendant, because of physical disability or poverty, is unable to pay fine and/or costs either immediately or in installment payments, he must be relieved of the fine and/or costs; or, in the alternative, be required to report back to the court at a time fixed by the court to determine if a change of condition has made it possible for the defendant to commence making installment payments toward the satisfaction of fine and/or costs."

The record clearly reflects that the appellant failed to comply with the conditions of

his suspended sentence. Testimony indicates that the appellant made little effort to obtain employment. The appellant's own testimony shows he thought about and would like to return to his job at Dayton Tire and Rubber Company, but never got around to applying. The appellant presented no medical evidence indicating any disability. Accordingly, there is sufficient evidence to sustain the revocation of the suspended sentence.

■ Since failure to pay restitution, court costs, and fees was the reason for revocation, one cannot conclude there was per se discrimination resulting from indigency. It appears the appellant was not unable to make restitution, but rather chose not to find employment to enable him to do so.

Although the exact situation herein has not been addressed previously by this Court, similar questions have been answered by courts in other jurisdictions. In *State v. Gerard,* 57 Wis.2d 611, 205 N.W.2d 374 (1973), the defendant's probation was revoked for failure to comply with the terms thereof, including failure to pay court costs, disbursements and restitution. There, the defendant informed the court at the time of sentencing that if he was put on probation he was confident he could obtain gainful employment. The conditions of his suspended sentence were based on that information.

Upon revocation of his probation, the defendant contended the conditions thereof were unconstitutional in that they denied him equal protection because he was an indigent. In answering that contention, the court distinguished *In re Antazo,* 3 Cal.3d 100, 89 Cal.Rptr. 255, 473 P.2d 999 (1970), but quoted with approval the following language therefrom:

" ' . . . we do not hold that the imposition upon an indigent offender of a fine and penalty assessment, either as a sentence or as a condition of probation, constitutes of necessity in all instances a violation of the equal protection clause. Depending upon the circumstances of the particular case and the condition of the

individual offender, there are a variety of ways in which the state may fine the indigent offender, as alternatives to imprisonment, without offending the command of equal protection . . . Rather, our holding is simply that an indigent who would pay his fine if he could, must be given an option comparable to an offender who is not indigent. When the indigent offender refuses to avail himself of such alternatives at the inception, or defaults or otherwise fails to meet the conditions of the particular alternative which is offered him without a showing of reasonable excuse, the indigent offender becomes in the eyes of the court exactly the same as the contumacious offender who is not indigent. When either of these conditions obtain the offender's *indigency* ceases to be dispositive and he may, consistently with the mandate of the equal protection clause, be relegated to "working out" his fine by imprisonment.' " (Emphasis original)

The court then went on to state in *State v. Gerard,* supra, as follows:

"The case at hand does not involve discrimination based upon wealth, nor is this a case where the indigent defendant could not pay such costs and thereby had to serve an X-amount of time in jail at a dollar a day. Rather, this is a case where the defendant led the court to believe he would be working and supporting his family if allowed to be put on probation. He was therefore given an option comparable to an offender who is not indigent—that is, jail or probation. While on probation the defendant had several jobs and was no longer indigent. The first was at Ampco Metal with a $90 per week take-home pay. The second was at Geuder-Paeschke and Frey Company with a $120 a week take-home pay. At this point in time he had the ability to at least make some payments. He refused to pay and did not pay anything—not even a nominal amount. *In this case, when the defendant had the ability to pay at least something and refused to avail himself of his alternatives, or refused to even at-*

*tempt to comply with probation conditions without a showing of reasonable excuse, he became in the eyes of the law exactly the same as the contumacious offender who is not indigent. His indigency ceases to be dispositive of the issue. In re Antazo, supra. His right to equal protection under the law has not been violated. He was given a fair chance. His indigency did not cause his probation to be revoked, but rather his own refusal to at least attempt compliance. His contumacious actions caused revocation and he knew of this possibility."* (Emphasis added)

■ The decision of the trial court to revoke the suspended sentence in whole or only in part is within the sound discretion of the trial court and that decision will not be interfered with absent an abuse thereof. *Wallace v. State,* Okl.Cr., 562 P.2d 1175 (1977), and *Barthiume v. State,* Okl.Cr., 549 P.2d 366 (1976).

■ In the instant case, there was sufficient evidence to support the trial court's decision that the appellant had failed to make restitution and that his failure was not due to impossibility, undue hardship, physical disability, or other causes. For that reason the order of the trial court revoking appellant's suspended sentence is *AFFIRMED.*

BRETT and BUSSEY, JJ., concur.