IN the INTEREST OF R.W.S., a child under the age
of eighteen years: R.W.S., Appellant-Petitioner,

v.

STATE of Wisconsin, Respondent.

Supreme Court

*No. 89–1826. Argued April 23, 1991.—Decided June 20, 1991.*

(Also reported in 471 N.W.2d 16.)

For the appellant-petitioner there was a brief and oral argument by *Virginia A. Pomeroy,* assistant state public defender.

For the respondent the cause was argued by *Gregory M. Posner-Weber,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

CALLOW, WILLIAM G., J.   This is a review of a decision of the court of appeals, *In Interest of R.W.S.,* 156 Wis. 2d 526, 457 N.W.2d 498 (Ct. App. 1990). The court of appeals affirmed a dispositional order of the Waukesha county circuit court, Judge Kathryn W. Foster, requiring in part that R.W.S. pay $900 restitution as a result of a charge that was "read-in"[1] and dismissed.

---

[1]The "read-in" procedure as it applies in adult criminal cases is fully discussed in *Austin v. State,* 49 Wis. 2d 727, 183 N.W.2d 56 (1971). Under this procedure, the defendant does not plead to certain charges, and these charges are "read-in" to the record. He or she is not sentenced on these read-in charges, but these admitted, uncharged offenses are considered in sentencing him or her on the charged offense. *Austin,* 49 Wis. 2d at 732. The defendant is not exposed to consecutive or concurrent sentences for the

Two issues are before this court: (1) Can a circuit court order restitution in a juvenile proceeding for delinquency petitions which have been dismissed and read-in?, and (2) If so, can a circuit court in a juvenile proceeding order such restitution to be made directly to an insurance company?

We first conclude that the circuit court has the authority to order a juvenile to pay restitution as a result of an offense which forms the basis of a delinquency petition, when the juvenile has admitted that offense and the delinquency petition is dismissed under the read-in procedure. Such an order is consistent with the purposes of the Children's Code (ch. 48, Stats.) generally, and with the specific language of sec. 48.34, Stats.[2]

---

read-in offenses under this procedure. However, the defendant does run the risk that he or she may receive a more severe sentence for the offense upon which the defendant is convicted (or, in a juvenile case, the delinquent act the juvenile is found to have committed.) *Id.*

[2]Section 48.34, Stats., provides in part:

**Disposition of child adjudged delinquent.** If the judge adjudges a child delinquent, he or she shall enter an order deciding one or more of the dispositions of the case as provided in this section under a care and treatment plan. . . . The dispositions under this section are:

. . ..

**(2)** Place the child under supervision of an agency, the department if the department approves or a suitable adult, including a friend of the child, under conditions prescribed by the judge including reasonable rules for the child's conduct and the conduct of the child's parent, guardian or legal custodian, designed for the physical, mental and moral well-being and behavior of the child.

. . ..

**(5)(a)** If the child is found to have committed a delinquent act which has resulted in damage to the property of another, or actual

We next conclude that the circuit court has the authority to order the juvenile to pay restitution directly to an insurance company which has reimbursed the victim for the loss. We find no reason to limit restitution payments by requiring direct payment to the victim of the crime in cases such as this.

The relevant facts follow. The State filed two "Petitions for Determination of Status" (delinquency petitions) in the circuit court against R.W.S. in July 1988. Each petition related to an incident of alleged burglary, contrary to sec. 943.10(1)(a), Stats. The first petition ("G") alleged that R.W.S. had burglarized the home of his parents on July 1, 1988, taking several bottles of liquor and some stereo equipment. The second petition ("H") alleged that R.W.S. had burglarized his parents' home on June 29 or 30, 1988, taking, among other things, $900 in cash from a safe in the home.

At the dispositional hearing on January 6, 1989, R.W.S. admitted the allegations in petition G. He also admitted that he burglarized his parents' home as alleged in petition H, but denied taking $900 from the safe. Pursuant to a plea agreement, the court advised R.W.S. that in exchange for his admission to the allegations in petition G, petition H would be dismissed and "read-in" for purposes of disposition. The circuit court set the restitution amount for stolen and damaged property at $140, pending a hearing on the remaining $900.

physical injury to another excluding pain and suffering, the judge may order the child to repair damage to property or to make reasonable restitution for the damage or injury if the judge, after taking into consideration the well-being and needs of the victim, considers it beneficial to the well-being and behavior of the child. . . . Objection by the child to the amount of damages claimed shall entitle the child to a hearing on the question of damages before the amount of restitution is ordered.

After a restitution hearing on February 17, 1989, the circuit court found that the State had proven that R.W.S. took the $900 by clear, satisfactory and convincing evidence. On February 21, 1989, the court amended the restitution order to $1,040, $940 of which was to be paid to the victims' insurer, West Bend Mutual Insurance Company. On September 11, 1989, the circuit court denied R.W.S.'s motion for reconsideration. The court of appeals affirmed the circuit court's dispositional order on May 2, 1990. We have accepted R.W.S.'s petition for review pursuant to sec. (Rule) 809.62, Stats., and affirm the decision of the lower court.

## I.

R.W.S. first argues that the circuit court did not have authority under the Children's Code, ch. 48, Stats., or under the common law to order him to make restitution based on delinquency petitions which were dismissed and read-in.[3] The question of judicial authority is an issue of law and we decide this issue without deference to the lower courts. *In Interest of E.C.,* 130 Wis. 2d 376, 381, 387 N.W.2d 72 (1986).

R.W.S. claims that the circuit court cannot order restitution based upon delinquent acts that have not been adjudicated, because ch. 48, Stats., does not

---

[3]R.W.S. admitted burglarizing his father's house on June 29, 1988, taking a bottle of liquor and a small amount of money. He denied taking $900 from the safe, but, as the dissent fails to acknowledge, he was given an opportunity to contest the circuit court's finding that he had taken the $900 during the burglary. He does not appeal that determination, and as his counsel conceded at oral argument before this court, the circuit court's finding that R.W.S. took $900 from the safe during the burglary is not an issue for purposes of this decision.

expressly provide for this as a dispositional alternative. R.W.S. argues that there is no statutory authority for "read-ins" in juvenile cases. R.W.S. cites *E.C.*, 130 Wis. 376, 390, for the proposition that a circuit court may not order a particular dispositional alternative unless ch. 48 expressly provides for that disposition. R.W.S. contends that the language of sec. 48.34(5)(a), by contrast, clearly limits restitution to damage or injury caused by the act for which the child has been adjudged delinquent.

Subchapter VI of ch. 48, Stats., discusses the disposition of cases in which a child is adjudged to be delinquent. Section 48.335(1) and (5), Stats., provides: "(1) The court shall conduct a hearing to determine the disposition of a case in which a child is adjudged to be delinquent. . . . (5) At the conclusion of the hearing, the court shall make a dispositional order in accordance with s. 48.355." Section 48.34 further provides: "If the judge adjudges a child delinquent, he or she shall enter an order deciding one or more of the dispositions of the case as provided in this section . . .." R.W.S. contends that the language of sections 48.335 and 48.34 clearly prohibit an order of restitution unless the child has been adjudged delinquent of the act for which restitution is ordered.

The sections do not explicitly prohibit such an order, however. Both sections refer to dispositions after the child is adjudged to be delinquent,[4] without specifically requiring that the restitution be limited to adjudicated acts of delinquency. As the court of appeals concluded, secs. 48.335 and 48.34 are ambiguous because reasonable minds could differ over whether an adjudication of delinquency on each specific offense is a prerequisite for the disposition of that offense. *R.W.S.*, 156 Wis.

[4]The court of appeals described this as a "threshold adjudication" of delinquency. *R.W.S.*, 156 Wis. 2d at 531.

2d at 529. *See also Kollasch v. Adamany,* 104 Wis. 2d 552, 561, 313 N.W.2d 47 (1981).

Because the language of these sections does not explicitly permit or prohibit an order of restitution for read-in delinquent acts, we resort to rules of statutory construction in order to discern the intent of the legislature. This court will examine the scope, subject matter and object of the statute to discern this intent. *Pulsfus Poultry Farms v. Town of Leeds,* 149 Wis. 2d 797, 806, 440 N.W.2d 329 (1989). Additionally, in construing ch. 48, Stats., the entire section and related sections are to be considered. *Pulsfus Poultry Farms,* 149 Wis. 2d at 804. When multiple statutes are contained in the same chapter and assist in implementing the chapter's goals and policy, the statutes should be read **in pari materia** and harmonized if possible. *State v. Amato,* 126 Wis. 2d 212, 216, 376 N.W.2d 75 (Ct. App. 1985). With these principles in mind, we examine the statutes in question.

The legislative purpose of ch. 48, Stats., is provided in sec. 48.01. Section 48.01(2) provides:

> This chapter shall be liberally construed to effect the objectives contained in this section. The best interests of the child shall always be of paramount consideration, but the court shall also consider the interest of the parents or guardian of the child, the interest of the person or persons with whom the child has been placed for adoption and the interests of the public.

The term "liberal" is often used to signify an interpretation which produces broader coverage or more inclusive application of statutory concepts. What is called a liberal construction is ordinarily one which makes a statute apply to more things or in more situations than would be

the case under a strict construction. Singer, *Sutherland Statutory Construction,* sec. 58.02 (4th ed. 1984). Applying a liberal construction to sec. 48.34 indicates that a child need not be adjudicated delinquent on a specific offense before restitution can be read-in on that offense as a result of a plea agreement. This is because under this interpretation, the statute applies more expansively, and permits the more frequent use of the read-in procedure for restitution. Neither sec. 48.335 nor sec. 48.34 explicitly requires an adjudication of delinquency on the particular offense for which the restitution is ordered before a read-in is permitted. In this case, the circuit court had adjudicated R.W.S. as delinquent on the charge reflected in petition G. R.W.S. admitted to a related offense (the charge reflected in petition H), and agreed that it would be read-in in return for the State's promise not to prosecute based on that offense.

■

Section 48.34, Stats., provides for several dispositional alternatives available to a judge after he or she adjudges a child delinquent. ("He or she shall enter an order deciding one or more of the dispositions.") Sections 48.34(2) and (5)(a) are both applicable in this instance. R.W.S.'s contention that the circuit court does not have statutory authority to order restitution fails in light of these sections.

■

The circuit court exercised its authority under sec. 48.34(2), Stats., finding that R.W.S. would benefit from a period of supervision under the Waukesha County Community Human Services Department and placement at Lad Lake. In addition to other conditions and rules of conduct, the court ordered restitution in the amount of $1,040. Section 48.34(2), Stats., authorizes the court to prescribe conditions, "including reasonable

872

rules for the child's conduct . . . designed for the physical, mental and moral well-being and behavior of the child." The court of appeals concluded that allowing restitution on a dismissed and read-in charge was a "reasonable rule designed for a child's moral well-being." *R.W.S.,* 156 Wis. 2d at 532. While R.W.S. argues that a "reasonable rule" does not include the requirement to pay restitution, we determine that the legislature did not intend that sec. 48.34(2) be read so narrowly that such a requirement is precluded. The Children's Code is designed to further the best interest of the child (sec. 48.01(2)), and the operative language in sec. 48.34(2) is: "designed for the physical, mental and moral well-being and behavior of the child." Because we find that restitution promotes the moral well-being and behavior of the child, we do not find the circuit court order inconsistent with this goal.[5] *See* Schneider and Warner, *The Role of Restitution in Juvenile Justice Systems,* 5 Yale L. and Policy Rev. 382, 398 (1986–87).

This interpretation is also harmonious with the language of sec. 48.34(5)(a), Stats. Whereas the precatory language of sec. 48.34 indicates that the judge shall enter a dispositional order if he or she adjudges a child delinquent, sec. 48.34(5)(a) indicates that if the child "is found to have committed a delinquent act," the judge may order the child to make reasonable restitution. In this case, the child was found to have committed two delinquent acts; he admitted committing both acts, but only one was prosecuted. The circuit court's order of restitution for petition H was not inconsistent with the language of sec. 48.34(5)(a).

---

[5]The promotion of the moral well-being and behavior of children is a public policy interest. Public policy considerations exert a significant influence on the process of statutory interpretation by the courts. Singer, *supra,* sec. 56.01.

■ Read together, in light of the goals of ch. 48, Stats., and the rehabilitative nature of restitution, these sections implicitly permit a circuit court to order restitution on a read-in offense, if such an order is beneficial to the well-being of the child offender. This is unlike our holding in *E.C.,* where we did not find implied authority for the circuit court to expunge juvenile police records, because such a finding was contrary to the plain and unambiguous language of sec. 48.396(1), Stats. *E.C.,* 130 Wis. 2d at 390–91. Unlike *E.C.,* this case does not demonstrate the "unfettered [use of] discretion to craft unique and unspecified remedies in juvenile matters," *id.* at 390, because the language of sec. 48.34, Stats., construed in light of legislative intent, allows the use of restitution as a remedy in juvenile matters.

Further support for this conclusion is found by analogy to the adult criminal provisions. We explained the propriety of drawing such an analogy in *Winburn v. State,* 32 Wis. 2d 152, 145 N.W.2d 178 (1966). We cautioned that the juvenile law should not be administered as a criminal statute, and the rules of criminal procedure were not to be engrafted upon the Children's Code. *Winburn,* 32 Wis. 2d at 158. We recognized that the philosophy behind the Children's Code was rehabilitation and treatment rather than incarceration and punishment. *Id.* at 161–62. Nonetheless, we stated that juvenile procedures took on a character of "crime and punishment" because "what may appear to a juvenile worker or judge as treatment may look like punishment to the juvenile." *Id.* at 161. We also recognized that the best interest of the child is not viewed in isolation of the "best interests of the public." *Id.* (citing sec. 48.01(3), Stats. 1965).[6]

---

[6]Now sec. 48.01(2), Stats.

Restitution, in addition to making the victim whole, and removing the profit from delinquent activity, is a form of rehabilitation, and can advance the "physical, mental and moral well-being and behavior of the child." Section 48.34(2), Stats. This is the case even though the rehabilitation is a perceived hardship to the child. The concept of criminal responsibility is not totally irrelevant in juvenile cases. *Winburn,* 32 Wis. 2d at 163. We find, as we did in *Winburn* and as this case demonstrates, that there are some parallels to be drawn between the Children's Code and the criminal procedures, and an analogy may properly be drawn in this case.

Restitution is a permissible condition for probation in criminal cases. Section 973.09(1)(b), Stats. *See also State v. Jackson,* 128 Wis. 2d 356, 363, 382 N.W.2d 429 (1986); *Huggett v. State,* 83 Wis. 2d 790, 796, 266 N.W.2d 403 (1978); *State v. Gerard,* 57 Wis. 2d 611, 619, 205 N.W.2d 374 (1973). We stated, in *Huggett:*

> Restitution can aid an offender's rehabilitation by strengthening the individual's sense of responsibility. The probationer may learn to consider more carefully the consequences of his or her actions. One who successfully makes restitution should have a positive sense of having earned a fresh start and will have tangible evidence of his or her capacity to alter old behavior patterns and lead a law-abiding life.

*Huggett,* 83 Wis. 2d at 798. These same goals of rehabilitation and strengthening the juvenile's sense of responsibility exist under the Children's Code. *See* sec. 48.01(1)(c), Stats. ("to substitute [for the consequences of their delinquent acts] a program of supervision, care and rehabilitation"); *see also* Schneider and Warner,

*supra* at 398 ("the fundamental rationale of this disposition is to enhance accountability and responsibility"); Galloway, *The Use of Restitution,* 23 Crime and Delinquency 57 (1977); A. Schneider, *Guide to Juvenile Restitution* 10 (Department of Justice 1985).

Restitution has been held to be a proper disposition under adult read-in proceedings. *Gerard,* 57 Wis. 2d at 619; *Garski v. State,* 75 Wis. 2d 62, 71, 248 N.W.2d 425 (1977). In *Gerard,* we stated:

> Trial courts often required as a condition of probation that the defendant make restitution for all property or monetary losses caused by the criminal acts of the defendant which have been brought to the court's attention, although the defendant has been convicted or pleaded guilty only to one of them. In such situations, when the amount of the loss is determined on the face of the record or by defendant's admission, no problem arises as to the amount of restitution which can be made a condition of probation.

*Gerard,* 57 Wis. 2d at 619.

In this case, R.W.S. admitted the burglary which was the alleged delinquent act in petition H. Although he did not admit to taking the $900, this amount is determinable from the face of the record. This amount was established before the circuit court at a restitution hearing, and R.W.S. does not contest this finding on appeal. Hence, restitution for this amount was properly ordered pursuant to the read-in procedure.

R.W.S. argues that analogies to criminal cases are improper, because unlike adult defendants who receive actual reductions in the maximum sentences they can receive under the read-in procedure, a juvenile receives no benefit for allowing a charge to be read-in. We disa-

gree that a juvenile receives no benefit for admitting to read-in charges. In this case, R.W.S. did not face the possibility of a separate formal delinquency adjudication on petition H. The State was precluded from proceeding against R.W.S. on petition H, and R.W.S. was free from any other dispositions under sec. 48.34 based on the charges in petition H.

We recognize the importance of protecting the interests of victims of offenses such as these. To hold, as R.W.S. urges this court, that restitution to victims can only be ordered when a child has been adjudicated delinquent for that particular offense would frustrate these interests, and prejudice the juvenile. Such a policy would prevent the juvenile from escaping the additional adjudication for each alleged delinquent act, as the State would be forced to proceed on each offense in order to ensure restitution to the victim. Additionally, the adjudication of each delinquent act would be time consuming and impose a further imposition on the victims of the offenses, by requiring their extended presence in the court. By allowing the disposition of restitution on an admitted and read-in offense, in contrast, both the long term interests of the juvenile (as discussed above) and the interests of the public are served. These interests are present in adult criminal restitution cases, and are present here. *See State v. Kuba,* 150 Wis. 2d 618, 620, 443 N.W.2d 17 (Ct. App. 1989) ("[R]estitution serves the goals of probation by rehabilitating the probationer and protecting the state and community interest.").

R.W.S. argues that the Supreme Court's holding in *Hughey v. United States,* 110 S. Ct. 1979 (1990), precludes the circuit court from ordering restitution for uncharged offenses. In *Hughey,* the Court held that restitution under the Victim and Witness Protection Act, 18 U.S.C. sec. 3579(a) (1982), was only authorized for

losses caused by conduct underlying the offense of conviction and not for other acts. *Hughey,* 110 S. Ct. at 1982.

*Hughey* does not control the outcome of this case for two reasons. First, the defendant in *Hughey* never admitted to the uncharged offenses. In this case, R.W.S. admitted to the uncharged offense, a fact that is pivotal to our holding today. Second, the statutory language of 18 U.S.C. sec. 3579(a) limits restitution to the victims of the offense of conviction.[7] For these reasons, *Hughey* does not conflict with our conclusion that restitution can be ordered as a disposition of an admitted and read-in offense.

## II.

R.W.S. also argues that the circuit court does not have authority to order restitution payments directly to an insurer. The basis for this argument is that there is no express provision allowing such a disposition in ch. 48, Stats. Additionally, R.W.S. argues, the adult restitution statute[8] for many years has specifically allowed for restitution to an insurer. Reasoning that the legislature "is presumed to act with full knowledge of the existing

---

[7]18 U.S.C. sec. 3579(a) (now 18 U.S.C. sec. 3663 (1988)) provides, in part:

The court, when sentencing a defendant convicted of an offense under this title . . . may order . . . that the defendant make restitution to any victim of such offense.

[8]Section 973.20(5)(d), Stats. Although this section was not enacted until 1987, the Judicial Council Note indicates that this section "carries forward the provision of prior s. 973.09(1)(b), Stats., allowing restitution to insurers, sureties, etc." 1987 Act 398, sec. 43.

laws, including statutes," *Maxey v. Racine Redev. Auth.,* 120 Wis. 2d 13, 24, 353 N.W.2d 812 (Ct. App. 1984), R.W.S. argues that the legislature would have specifically provided for restitution to insurers under sec. 48.34(5)(a), Stats., when this statute was amended in 1985.[9]

It is a settled rule of construction that "where a statute with respect to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant in showing that a different intention existed." *State v. Welkos,* 14 Wis. 2d 186, 192, 109 N.W.2d 889 (1961). The court of appeals determined that the two restitution statutes (secs. 48.34(5)(a) and 973.09(1)(b), Stats. 1983–84) were not so closely related as to "necessarily give this principle vitality." *R.W.S.,* 156 Wis. 2d at 533. *See also In Interest of I.V.,* 109 Wis. 2d 407, 413–14, 326 N.W.2d 127 (Ct. App. 1982).

As we have stated, there are similarities between the adult and juvenile restitution statutes, particularly in the goals they seek to achieve. Although they share common goals, those of contributing to the rehabilitation of the offender and the recovery of the loss by the victim, their actual operation is not so closely related that we would conclude that they are "similar statutes" for purposes of applying a presumption that the legislature did not intend to permit restitution to insurers under ch. 48, Stats.[10] Rather, we conclude that these statutes are not sufficiently similar to lead this court to conclude that the

---

[9]*See* 1985 Wis. Act 311, sec. 7g.

[10]The question of the relationship between secs. 48.34(5)(a) and 973.09(1)(b), Stats. 1983–84, and whether they are "similar statutes" is a difficult one to answer because it is unclear what makes statutes similar enough to lead a court to conclude that the

legislature would naturally refer to the insurer's language in sec. 973.09(1)(b), Stats. 1983–84, when amending sec. 48.34(5)(a).

██

Additionally, this conclusion is consistent with the court of appeals' decision in *I.V.* In *I.V.,* the court of appeals affirmed a circuit court order which ordered a juvenile to pay restitution directly to an insurer. *I.V.,* 109 Wis. 2d at 415. While this was not the appealed issue, the court of appeals' decision implicitly sanctioned restitution to insurers. *I.V.* was decided in 1982, several years before sec. 48.34(5)(a), Stats., was amended. It would be inconsistent to conclude that the legislature was aware of the adult statute, sec. 973.09(1)(b), Stats. 1983–84, but was unaware of the court of appeals' decision implicitly allowing this result. As we stated in *Zimmerman v. Wisconsin Elec. Power Co.,* 38 Wis. 2d 626, 634, 157 N.W.2d 648 (1968), "when the legislature acquiesces or refuses to change the law, it has acknowledged that the courts' interpretation of legislative intent is correct." The legislature could have amended sec. 48.34(5)(a) to expressly prohibit restitution to insurers, but did not do so. It is unreasonable to conclude that the legislature would frustrate the purpose of restitution by denying direct payment to the insurer, and requiring payment directly to the victim (who ultimately must

---

legislature necessarily considered one when amending the other. Sutherland states:

> The guiding principle [in determining if statutes should be construed together], however, is that if it is natural and reasonable to think that the understanding of members of the legislature . . . be influenced by another statute, then a court called upon to construe the act in question should also allow its understanding to be similarly influenced.

Singer, *supra,* at sec. 51.03.

repay the insurer). For these reasons, we conclude that the legislature did not intend to prohibit restitution to insurers under ch. 48, Stats.

The court of appeals reasoned that the goal of restitution was to teach the juvenile responsibility and accountability, and whether the restitution went to the actual victim or the victim's insurer was irrelevant for purposes of accomplishing this goal. *R.W.S.*, 156 Wis. 2d at 533–34. The court also reasoned that ordering restitution directly to insurers furthered two important policy goals: (1) to avoid a windfall to a delinquent juvenile or the victim and (2) to promote judicial economy by eliminating the need for a separate civil action. *Id.* at 533. We agree with the court of appeals' reasoning and affirm its conclusion that the circuit court may order restitution in juvenile cases directly to an insurer.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). Perhaps the legislature should provide for restitution for delinquency petitions that have been dismissed, but it has not. I therefore dissent.

First, the statutes do not authorize read-ins in juvenile cases. The statutes governing dispositional orders make no reference to reading in charges that have been dismissed. I do not believe the court should permit read-ins without statutory authorization.

Second, the restitution statute in the Children's Code, sec. 48.34(5)(a), provides for restitution only for damage resulting from a delinquent act which the child "is found to have committed." In this case the circuit court found that the child committed only one burglary. The second charge of burglary was dismissed. Because no court found that the child committed the second bur-

glary, no statutory authority exists for the court to order restitution relating to the second charge of burglary. *Cf. Hughey v. United States,* — U.S. —, 109 L. Ed. 2d 408 (1990) (interpreting federal restitution order as limited to offense of conviction).

Third, although the child admitted the second burglary, he denied stealing $900 during that burglary. Burglary and theft are two separate offenses.[1] I do not think that restitution can be ordered for the value of property the state alleges was stolen on the basis of a read-in for a burglary when the child consistently denies the theft.[2]

For the reasons set forth, I dissent.

I am authorized to state that Chief Justice Nathan S. Heffernan joins this dissent.

[1] "Whoever intentionally enters any of the following places without consent of the person in lawful possession and with intent to steal or commit a felony . . ." is guilty of burglary. Section 943.10, Stats. 1989–90.

Theft is defined as follows: "Intentionally takes and carries away, sues, transfers, conceals, or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property." Section 943.29, Stats. 1989–90.

[2] *In the Interest of I.V.,* 109 Wis. 2d 407, 326 N.W.2d 127 (Ct. App. 1982), the court of appeals held that the juvenile court can order restitution for property stolen when the child admitted the burglary and the court found the child delinquent. In that case, however, in contrast to this case, the delinquent did not deny the theft.