STATE, Respondent, v. GARNER, Appellant.

*No. State 167. Argued February 3, 1972.—Decided March 2, 1972.*
(Also reported in 194 N. W. 2d 649.)

For the appellant there was a brief and oral argument by *James R. Scott* and *Stuart E. Schmitz,* Milwaukee Legal Services.

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J.   Garner claims he was entitled to a new judge at his second revocation hearing, either by virtue of sec. 971.20, Stats., or because Judge SERAPHIM should have disqualified himself for actual bias and prejudice. Prior to the adoption of the Criminal Procedure Code, it was necessary to file an affidavit of prejudice in a criminal suit, but by virtue of sec. 971.20,

effective July 1, 1970, an accused may disqualify a judge and obtain a substitute judge without alleging prejudice. However, this right is a pretrial right and must be exercised "before making any motion or before arraignment." Consequently, Garner has no rights under this statute.[2]

Normally, the judge who hears the evidence of guilt should also do the sentencing. For the purpose of continuity, there are exceptions. *See* sec. 256.08, Stats. *See State v. Herfel* (1971), 49 Wis. 2d 513, 182 N. W. 2d 232, construing sec. 974.02, relating to a successor judge hearing a motion for a new trial. A trial judge may disqualify himself for prejudice during trial or before sentencing and it is quite true that a fair and impartial judge is as crucial at the time of sentencing as at any other stage of trial. *James v. State* (1964), 24 Wis. 2d 467, 473, 129 N. W. 2d 227. Here, Garner claims Judge SERAPHIM was in fact prejudiced because of certain remarks he made at the first revocation hearing and should have sua sponte removed himself. While the statements of the county judge were unnecessary, ostentatious, and do not exhibit ideal behavior on the part of a judge, nevertheless, they do not evince bias or prejudice in the sentencing. Every judge who withholds sentence and places a man on probation has a slightly different view of the sentencing after the probation

[2] An analogy to procedure in civil cases under sec. 261.08, Stats., might be drawn. This court has held that in a proceeding to modify a previously granted judgment of divorce, an affidavit of prejudice under sec. 261.08 does not lie. *Bacon v. Bacon* (1874), 34 Wis. 594, 595; *Luedtke v. Luedtke* (1966), 29 Wis. 2d 567, 570, 139 N. W. 2d 553. The concurring opinion of GORDON and BEILFUSS, JJ., in *Luedtke* stated that the notion an affidavit of prejudice would not lie in a proceeding to modify a judgment should not be limited to divorce actions, *Luedtke* at page 572; the reasoning of this concurrence was approved in *Estate of Scheibe* (1967), 35 Wis. 2d 89, 95, 150 N. W. 2d 427, which held there was no right to a change of judge under sec. 253.142 upon a remand in a probate matter for further evidentiary proceedings.

violation. He is entitled to consider the violation and the needs of the convicted defendant at the time of sentencing. There is no claim here that the sentence was excessive for the crime admitted in view of the circumstances. Certainly, the fact that unfavorable evidence has come to the judge's attention in another proceeding does not disqualify him. Judicial knowledge properly acquired is not a sufficient basis for a disqualification; otherwise, a presentence report would likely disqualify most judges. Knowledge is not necessarily prejudice. *State v. Carter* (1966), 33 Wis. 2d 80, 88, 146 N. W. 2d 466; *State v. Cleveland* (1971), 50 Wis. 2d 666, 671, 184 N. W. 2d 899. The same rule applies to juries. *See Thomas v. State* (1972), 53 Wis. 2d 483, 192 N. W. 2d 864.

We do not find prejudice in the fact Judge SERAPHIM served, in effect, as prosecuting attorney. The record does not show that a representative of the state was present, but whether he was or not, Judge SERAPHIM called and examined all the state witnesses himself. A trial judge while exercising his limited discretion to call and examine a witness should not function as a partisan, as this could very well mislead the jury. *See State v. Nutley* (1964), 24 Wis. 2d 527, 562, 129 N. W. 2d 155. But even where there is no jury, the judge should not take an active role in trying the case for either the state or the defense. The judge who acts as an advocate skates on thin ice in any judicial hearing and runs the risk of turning the adversary system into an inquest wherein the trier of the fact calls and questions the witnesses. However, we find no reversible error on these facts.

Garner claims the court placed an invalid condition on his probation because he was required to take his family off the county welfare roll. Under sec. 973.09, Stats., a court, in placing a convicted defendant on pro-

bation, may impose "any conditions which appear to be reasonable and appropriate." While courts have recognized constitutional limitations on conditions of probation,[3] a requirement that one supports or makes a good-faith effort to support his family is justified. Here, Garner was convicted of nonsupport and the condition of his probation was directly related to the crime and his rehabilitation. The condition was reasonable. The American Bar Association in its *Standards Relating to Probation* (Approved Draft, 1970), provides in standard 3.2 that a condition may appropriately deal with matters such as meeting family responsibilities.[4] We

---

[3] *In re Allen* (1969), 71 Cal. 2d 388, 455 Pac. 2d 143, 78 Cal. Rptr. 207 (condition that indigent reimburse state for cost of appointed counsel discourages right to counsel); *In re Antazo* (1970), 3 Cal. 3d 100, 473 Pac. 2d 999, 89 Cal. Rptr. 255 (condition that admittedly indigent defendant pay fine and penalty assessment invalid as denial of equal protection); *Inman v. State* (1971), 124 Ga. App. 190, 183 S. E. 2d 413 (condition that defendant get short haircut violative of rights of self-expression and personal freedom); *People v. Arvanites* (1971), 17 Cal. App. 3d 1052, 95 Cal. Rptr. 493, and *In re Mannino* (1971), 14 Cal. App. 3d 953, 92 Cal. Rptr. 880 (sweeping restrictions on first amendment activity held invalid conditions).

[4] "**3.2 Nature and determination of conditions.**

"(a) It should be a condition of every sentence to probation that the probationer lead a law-abiding life during the period of his probation. No other conditions should be required by statute; but the sentencing court should be authorized to prescribe additional conditions to fit the circumstances of each case. Development of standard conditions as a guide to sentencing courts is appropriate so long as such conditions are not routinely imposed.

"(b) Conditions imposed by the court should be designed to assist the probationer in leading a law-abiding life. They should be reasonably related to his rehabilitation and not unduly restrictive of his liberty or incompatible with his freedom of religion. They should not be so vague or ambiguous as to give no real guidance.

"(c) Conditions may appropriately deal with matters such as the following:

"(i) cooperating with a program of supervision;

agree with this standard on the nature and determination of conditions of probation and adopt it.

Probation conditions, to be effective, must meet the particular needs of the individual case if the theory of individualization of justice is to remain one of the underlying tenets of the probation system.[5] In this case we do not find the condition on Garner to get his family off of welfare relief required performance beyond his ability. There is testimony Garner had not sought employment after being laid off work and was satisfied with unemployment benefits. This testimony is disputed by Garner, but the trier of the fact believed the testimony of the probation officer, which it had a right to do. We accept Garner's theory that in directing him to get his family off of welfare rolls, the court meant he was to support his family. But we are not persuaded

"(ii) meeting family responsibilities;

"(iii) maintaining steady employment or engaging or refraining from engaging in a specific employment or occupation;

"(iv) pursuing prescribed educational or vocational training;

"(v) undergoing available medical or psychiatric treatment;

"(vi) maintaining residence in a prescribed area or in a special facility established for or available to persons on probation;

"(vii) refraining from consorting with certain types of people or frequenting certain types of places;

"(viii) making restitution of the fruits of the crime or reparation for loss or damage caused thereby.

"(d) Conditions requiring payment of fines, restitution, reparation, or family support should not go beyond the probationer's ability to pay.

"(e) The performance bond now authorized in some jurisdictions should not be employed as a condition of probation.

"(f) Probationers should not be required to pay the costs of probation."

[5] California courts have established a criteria for testing conditions of probation. A condition will be held invalid if it: (1) Has no relation to the crime of which the offender was convicted, and (2) relates to conduct which is not itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. *People v. Arvanites, supra; In re Mannino, supra.*

Garner supported his family to the extent of his ability. The amount of money he gave his wife was not sufficient and the family continued to remain on the welfare roll. Under sec. 52.055, Stats., the fact a family is receiving public assistance, although not conclusive of a refusal to support, is certainly some evidence of a failure to adequately support one's family.

The last contention of Garner is that the records of the Milwaukee Welfare Department were not properly received in evidence. The welfare department records are public documents and therefore qualified under the Official Records Act (sec. 889.18, Stats.).[6] *See* McCormick, *Evidence* (hornbook series), p. 614, sec. 291. While under the official-records exception to the hearsay rule custodianship is important, the person who makes the official entries and the official custodian need not be called to prove the authenticity of the records. Any competent witness may provide the required identification of official records as defined in sec. 889.18. 32 C. J. S., *Evidence,* p. 839, sec. 643; 30 Am. Jur. 2d, *Evidence,* p. 125, sec. 996. The claim of Garner that there was an insufficient showing of custodianship to qualify the records under sec. 889.25, the Business Records Act, is without merit because the statute is inapplicable.

*By the Court.*—Order affirmed.

---

[6] "889.18 **Official records.** (1) AS EVIDENCE. Every official record, report or certificate made by any public officer, pursuant to law, is evidence of the facts which are therein stated and which are required or permitted to be by such officer recorded, reported or certified, except . . . ."