STATE of Wisconsin, Plaintiff-Respondent,

v.

Thelmer DAVIS, Defendant-Appellant-Petitioner.

Supreme Court

*No. 84–588–CR. Argued September 6, 1985.—Decided February 11, 1986.*

(Also reported in 381 N.W.2d 333.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Donna L. Hintze,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *John J. Glinski,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, CHIEF JUSTICE. This is a review of an unpublished decision of the court of appeals dated November 13, 1984, summarily affirming an order of the circuit court for Milwaukee county, Ralph G. Gorenstein, circuit judge, which, on November 15, 1983, extended the probation of Thelmer Davis[1] for a third time. We reverse and remand to the circuit court, with directions to terminate Davis' probation supervision. We conclude that the trial judge abused his discretion in deciding to extend the probation period, because he based that decision on Davis' alleged failure to comply with conditions of her probation when those conditions had never before been explicitly stated by the court to be necessary for the satisfactory completion of the probation term.

The record demonstrates that, in 1974, Thelmer Davis was charged with the failure to report income while a recipient of assistance from the Milwaukee County Department of Public Welfare in violation of sec. 49.12 (6), Stats., a felony. After a jury trial, she was found guilty on November 24, 1975. She was placed on probation:

---

[1] In the record the defendant is variously referred to as Thelma or Thelmer. Moreover, her surname appears not only as Davis, but as Lock. We accept the name used by the petitioner in the appeal and review briefs—Thelmer Davis.

". . . for the period of 5 years in the custody and control of the *Department of Health and Social Services*[2] subject to *its* rules and orders and subject to the following conditions [none stated].

". . .

"As a further condition of probation the defendant shall make payments in such manner as the *Department* shall direct as follows: Restitution $1467.00." Emphasis supplied.[3]

---

[2] We emphasize that the order placed full custody and control in the Department of Health and Social Services. We also emphasize that, under the verbiage of this order, a probationer could very well conclude that only the Department of Health and Social Services need be satisfied. While this is clearly incorrect, this case illustrates the importance of clarity in imposing rules for probation and clarity in respect to who is setting the conditions of probation.

[3] All of the probation reports incorporate the following understanding of the terms of probation:

"Original Term of Probation: 5 years (Sentence was apparently imposed and stayed but exact nature of the sentence as indicated on the court order is not clear)."

There is a recurring reference to a two-week initial incarceration in the county jail. However, that portion of the original order was struck out, by whom the record does not demonstrate. Whether that term of incarceration was imposed or whether it was served is not clear. This uncertainty of provisions of the sentence and the conditions of probation permeates the record as a whole and demonstrates the failure of the court from the time of the conviction onward to set down with specificity the sanctions to be imposed and the conditions of probation with a minimally acceptable degree of clarity and precision. The journal entry on the day of sentencing, November 24, 1975, reflects that the trial judge ordered "restitution of costs." It can be surmised that what was intended was restitution and costs or perhaps merely payment of costs. The actual monetary charge for legal defense was not noted in the journal until December 9, 1975. There is nothing in the record to show that Davis was ever apprised of the existence of an amount of these costs for legal fees until near the end of the first five years of probationary supervision.

Davis was supervised by the probation agent of the Department of Health and Social Services from the date of conviction forward. In 1980, as the end of the five-year probationary period approached, Davis' agent advised the court, again presided over by Judge Gorenstein, that the probationary period should be extended by one year. He reported that, in the interim following the original conviction, Thelmer Davis' husband had, in 1978, been sentenced to the state penitentiary and since that time Davis was the sole source of support of the couple's three children, whose ages were four, nine, and eleven.

The probation agent emphasized that Davis had a steady job and, despite the imprisonment of her husband, the marriage was a stable one and that she was a good mother to her three children. The report revealed that Davis had only paid $105 during her first two years of supervision, but during that period she had been absent from work for two periods of maternity leave. The agent reported that Davis stated she had never been told by the probation department during the first two years to pay more toward her restitution obligation.

It apparently was not until January of 1980, according to the probation authorities, that any attempt was made to analyze Davis' expenses to determine what amounts, in light of her circumstances, she ought to be paying. A budgeting counsellor advised the probation authorities that Davis was "using her money wisely."

On the basis of the budgeting counsellor's analysis, Davis' probation agent concluded that Davis ought to have been paying $15 a month in satisfaction of her restitution obligation for the entire period of her probation. He concluded that, although her more recent performance was satisfactory, he could not characterize her payment pattern during the first two years as evidence of a good-faith effort. It was only that apparent lack of effort during the first two years of supervision that impelled the probation agent to suggest that the court continue Davis

on probation. He characterized her general rehabilitative status by stating:

> "[S]ince this agent began supervising her case in November of 1978 approximately there have been no serious adjustment problems on supervision. That is, Miss Davis maintains steady employment, a suitable place of residence, and provided for her family as best she could."

This same report, dated November 17, 1980, stated that the department did not learn until 1979, almost four years after the imposition of probation, that the judge required Davis to pay attorney's fees in the amount of $420. The agent's report stated that Davis, upon learning this, was "quite upset," because she had been told, because she was found indigent, she would be furnished counsel at no expense to herself.

The agent, nevertheless, recommended that the period of supervision be continued for one year and that Davis be expected to make monthly payments of $20.

The record supplied on this review fails to show the order entered subsequent to the hearing on the probation agent's petition, but the journal entries in the judgment roll, dated November 18, 1980, recite:

> "Court ordered probation extended for one (1) year and further ordered defendant to pay 10% interest per year on unpaid restitution."

In November of 1981, Davis was returned to court. The judge continued the probation for two years and, without any explanation or rationale appearing in the record before us, told the defendant to increase payments or be sent to jail. This decision was reached despite the recommendation of the probation officer that supervision be discontinued.

On November 15, 1983, Judge Gorenstein extended the period of probation for another two years despite the

renewed recommendation that probation be discontinued.[4] The judge, for the first time, stated that, if the defendant did volunteer work, such work could be counted in credit of her obligation at the rate of $2 per hour. Upon proof being submitted of volunteer work over a number of years, the court stated that credit for volunteer work would be allowed only subsequent to November 15, 1983.

On March 19, 1984, a notice of appeal to the court of appeals was filed. The court of appeals in a brief per curiam decision affirmed the trial court's order. Petition to review the decision of the court of appeals was granted by this court.

We reverse because of the abuse of discretion by the trial court because, without any analysis of the case itself, except in a most perfunctory way, it altered the terms of the probation and failed to apply in a reasoned manner the principles of *Huggett v. State,* 83 Wis. 2d 790, 266 N.W.2d 403 (1978).

The defendant was led to believe that, were she to conform to the terms of her probation as set by her probation officer during the terms of her probation, she would be complying with the conditions of her sentence. Yet, in respect to the crucial extension of the sentence, despite the fact that she had been doing everything that was explicitly required of her, she was told by Judge Gorenstein that she would have to get a second job or go to prison to serve a five-year term.

The trial judge's attitude evidencing an abuse of discretion is demonstrated by the transcript. At the very out-

---

[4] Davis' probation officer stated that, during the two-year period, Davis had continued to make the required payment, that she was steadily employed by the Wisconsin Telephone Company, and during most of the period in question was the sole support of her three children. Her probation officer requested that probation be terminated because of Davis' excellent adjustment to probation and her good-faith efforts to pay restitution. He proposed that a wage assignment be executed to assure payment of restitution.

set of the hearing that took place on November 15, 1983, Judge Gorenstein, prior to any statement of the facts, prior to any perspective on the case being furnished by counsel, commenced the substantive portion of the hearing with the statement, "I never do it." This statement was made without either the probation officer, the defendant, or defendant's counsel having an opportunity to be heard. From the very start of the hearing, the trial judge made it clear that no recitation of the facts, no consideration of the circumstances, and no review of the history of the case would impel him to even consider the request of counsel for the probation department for termination or modification of the probation, even though defendant's counsel and the probation officer were prepared to permit the execution of a wage assignment by Davis to make the department of public welfare whole for payments made to Davis. The hearing was made a sham when the trial judge at its very beginning made it clear that he would refuse to respond to, or consider, the circumstances of the case before him.

While restitution had been ordered from the outset, no attempt had ever been made by the judge to determine whether, in the initial probation periods, restitution in reasonable amounts was scheduled or whether the payments could, or should, be made by a young woman who was the sole support for three minor children. Due to judicial neglect, the defendant was set to embark upon a program of restitution which—even if carried out to the letter under Judge Gorenstein's approach to the problem—would only have resulted in repeated additional periods of supervision. Despite the fact that the public welfare department had realistically appraised Davis' capacity to make restitution and had earlier recommended that probation be terminated, the trial judge unrealistically persisted in continuing supervised probation when it was obviously not contributing to either the rehabilitation of the defendant or in making the county whole.

Thelmer Davis has been kept on probation for a period of ten years. Except for the first two years after her conviction—a period during which there appears to be little evidence of supervision over her or any guidance to help her—the defendant has usually made her payments on schedule. During the entire period she has been employed at a responsible job and has taken care of her family despite the fact that her husband was in prison. Most of the probationary period, she has single-handedly supported the family and has avoided any further entanglements with the law. Yet the court, at this late date, ten years after the original probation, in the hearing of November 15, 1983, stated:

"She took the money to begin with. She was found guilty by the jury. That's it, no more argument. I want to review this matter in 90 days and if she hasn't got her a second job or made some contribution, she's going to jail."

This statement was made by the trial judge in respect to an employed woman, who was supporting minor children, and who was complying fully with the orders of her probation officer and making restitution as required by the court's previous order.

The transcript reveals the following:

"THE COURT: . . . You've got one year to make it up, and you're either going to do it through volunteer work, $2 an hour, or pay it plus interest.

"MS. HARWICH: Judge, that's not even the minimum wage, $2 an hour.

"THE COURT: Well, volunteer work is not—I'm not going to give her the same credit as if she's out there. She can go out there and get a Saturday job and get her obligations done. She took the money to begin with. She was found guilty by the jury. That's it, no more argument. I want to review this matter in 90 days and if she hasn't got her a second job or made some contribution, she's going to jail.

 

"THE CLERK: February 21, 1984 at 9 o'clock.

"MS. HARWICH: Would you wait a moment.

"THE COURT: It should have been paid five years ago.

"MS. HARWICH: Can we wait and see if that day is agreeable for me, please.

"THE COURT: Extend probation for cause for another year. Two years.

"THE CLERK: 2/21/84, 9 o'clock.

"THE COURT: Add the interest on, Mr. Pasnecker so it was ordered back in 1980—Take it to your friendly bank. They will figure it out."

It should be remembered that the portion of the hearing was subsequent to the urgings of the probation department requesting that probation be terminated because the objective of probation had been satisfied. The crucial recommendation made by the probation department provided:

" Recommendation : Thelmer has made an excellent adjustment to probation supervision, and, given the extensions that have occurred thus far, she has been on probation supervision for a period of eight years. It is felt that during this time she has made a good faith effort toward the payment of court obligations, given the competing demands on her family income. Furthermore, the total amount that she has paid in thus far falls only $298.48 short of full payment of the entire amount of restitution. Therefore, in accordance with the criteria outlined in the Huggett[5] case, it appears unreasonable to extend Thelmer's probation any further. She has already been extended three years beyond the original term as handed down by the court on 11/24/75. Furthermore, since practically all of the restitution has been paid, it is felt that an extension of probation for the payment of costs and attorney

_____

[5] It should be noted that only in the documents submitted by the probation department was the *Huggett* standard considered. It was ignored by the trial judge.

fees is unnecessary. Therefore, it is requested that the court ordered condition of probation requiring payment of the remaining balance of court obligation be removed."

It is clear that it was only after Davis had been on probation for over eight years that the judge informed her that any volunteer work could be done in satisfaction of her restitution obligation. Had she been so informed earlier of this alternative, her obligation might well have been satisfied at an earlier time, for community work of the nature so tardily approved had been performed by Davis on a volunteer basis over a period of years prior to Judge Gorenstein's recognition of it.

The court of appeals stated that implicit in the trial court's decision is a finding that the probationer would have had the ability to pay if she had made a good-faith effort to secure another or second job. This legal proposition is contrary to *Huggett v. State,* 83 Wis. 2d 790, 266 N.W.2d 403 (1978), where this court recognized that it was possible for a probationer to make a good-faith effort to make restitution yet still be unable to pay the money owed. If such a finding was implicit in Judge Gorenstein's order, the finding was not based on the appropriate legal standard of *Huggett* and, hence, is in itself an abuse of discretion. *See, State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968). Implicit or not, the finding and the resulting order constituted an abuse of discretion in the circumstances here where Davis has made regular payments as directed in the amount thought appropriate by her probation officer and previously approved by the trial judge. Never before this final hearing, insofar as the record reveals, had Davis ever been informed that she was required to secure a second job or was she apprised of the fact that she would be given monetary credits toward her indebtedness by volunteer community work. It was capri-

495

cious for the court, eight years after the original probation order, to change the rules of probation and subject Davis, who was already—the record reveals—working overtime to support her family, to the requirement of assuming the burden of a second job or to impose an alternative requirement of "volunteer" work. Had the alternative been posed in the original order, it may well have aided Davis in her rehabilitation. The trial judge concluded that only if Davis was working at a second job could he consider her effort to be in good faith. This bit of judicial philosophy was imparted to the probationer for the first time in 1983.

In the instant case, the original probation period of five years was extended three times by the trial judge, for a total period double the maximum term of imprisonment for the original offense. In each case of extension of probation, the defendant substantially complied with the terms of probation, not only in terms of paying the restitution ordered by the probation department, but also in otherwise conducting herself in an exemplary manner. The record clearly showed that, in response to the court's order, Davis was paying the maximum possible toward restitution. In fact, the record showed that the payment of the ordered restitution caused her to fall behind in payment of the necessities of life for her family. A study by the Consumer Budget Counseling Service of Milwaukee undertaken at the request of the probation agent concluded that Davis could pay no more than $15 per month, that she was using her money wisely, and that she had no need of financial and debt counseling. The probation agent concluded that she could pay $15 per month toward the discharge of her debt. This she substantially did following the conclusion of the Budget Counseling Service report in 1980. The probation agent in his 1980 report commented, "Miss Davis maintains steady employment, a suitable place of residence, and provided for her family as best she could."

In the probation agent's report to the trial judge dated October 24, 1983, he stated:

"Thelmer has made an excellent adjustment to probation supervision, and . . . has been on probation supervision for a period of eight years . . . during this time she has made a good faith effort toward the payment of court obligations, given the competing demands on her family income."

The probation agent's recommendation that the supervision of Davis be terminated was rejected by Judge Gorenstein.

This court has specifically stated that the criminal justice system should not be employed to perform the functions of a collection agency (*Huggett v. State,* 83 Wis. 2d at 804), but it appears that that was precisely the function imposed upon the court in this case by Judge Gorenstein. We see no reason why the criminal justice system in these circumstances, where Davis has repeatedly and continuously demonstrated good faith, should not relinquish its hold upon Davis.

If, as it appears, she is indebted to the county welfare authorities, further criminal sanctions for the enforcement of a debt are inappropriate, although an agreement may be worked out to satisfy Davis' civil liabilities to the county welfare authorities. As stated above, such an agreement had been prepared by Davis' counsel and the county's attorney for presentation to the court in November of 1983. We conclude that it is inappropriate, however, to further continue criminal sanctions for the collection of what is acknowledged to be a debt. In *Huggett, supra* at 798, this court noted the dual goals of probation are " 'the rehabilitation of those convicted of crime and the protection of the state and community interest.' " Debt collection per se should not be facilitated by continuing the criminal process of supervision when the rehabilitative purposes have been accomplished and, as in this case,

497

when a reasonable alternative for the payment of restitution has been proposed by the defendant and the probation department.

The record reveals that Davis is gainfully employed and has held the same responsible job for over ten years. The record fails to reveal any failures on probation or criminal conduct whatsoever during the almost ten-year period of probation except for the fact that she has not been able to make restitution in full during that period. It would appear that all of the purposes of the criminal law have been satisfied in the proceedings to date. To the extent that Davis has a monetary obligation, and she does, it is civil in nature—she owes money to the county. To the extent that she has perpetrated a fraud upon the county, she has been punished by a ten-year period of supervision. The record reveals that it is only because of the obligation to make monetary restitution that the probation continues. As this court stated in *Huggett, supra* at 803:

> "If the probationer lacks the capacity to pay and has demonstrated a good faith effort during probation, failure to make restitution cannot be 'cause' for extending probation."

It is apparent that the trial judge, over the objections of the probation department, after the rehabilitative function of probation has been accomplished, is attempting to use the criminal law system for the collection of a debt. Section 973.09(3)(b), Stats., a portion of the laws enacted subsequent to the commencement of Davis' term of probation, requires that:

> "A probationer shall not be discharged from probation until payment of the ordered restitution . . . or the court determines that there is substantial reason not to continue to require payment."

498

Under the circumstances here, the continuation of probation for that purpose alone constitutes an abuse of discretion. The record teems with substantial reasons why the court should not have continued the probation period to compel payment of restitution. The defendant should be discharged from probation.

While this court in general accepts cases only if they are likely to be of significant precedential importance, we conclude that this case fits that category because it demonstrates the improper use of the criminal process to collect what eventually became no more than a civil debt. Additionally, we wish to make it absolutely clear that conditions of probation, from the outset, should not be altered except in circumstances that evidence the appropriate exercise of judicial discretion.

The reports of the probation department uniformly reflected that the defendant was conforming herself to the requirements of law. To the extent that reports of the Department of Public Welfare can reveal such facts, she was leading an exemplary life. For a period of eight years, she has been in substantial compliance with the requirements of conduct and repayment of the debt as outlined by the probation department. Her obligation to the welfare department was debt—simpliciter. The fulminations of the trial judge threatening her with a return to jail unless she secured an additional job were absurd—absurd because the expressly stated threat was that, because Davis was paying her debt to the county at a rate at which the probation department had set and previously had been approved by the court, but which the judge now thought insufficient, she should be sent to jail. The record reveals that Davis is living a law-abiding and productive life, supporting herself and her children.

This record demonstrates an instance where continued probation based on an altered definition of "good faith" during the probation period would severely under-

mine the probationer's prospect and expectation of rehabilitation which had been established by faithfully following the requirements as originally set. To extend her probation beyond a period that is now more than double the maximum sentence she could have received is unreasonable where the only deficiency is recognized as a mere debt. To threaten her with jail is to use the criminal law system to collect what even this particular judge earlier recognized in the same proceedings as a debt.

The decision of the court of appeals affirming the order of the circuit court should be reversed. Upon remand to the circuit court, Thelmer Davis should be discharged from further supervision. To the extent that her earlier adjudication of fraud constitutes a finding of indebtedness to the county, such indebtedness at this juncture is enforceable only by civil remedies.

*By the Court.*—The decision of the court of appeals is reversed. The case is remanded to the circuit court, and it is directed that the circuit court discharge the defendant Thelmer Davis from further supervision arising out of her conviction for violation of sec. 49.12(6), Stats., entered by the circuit court for Milwaukee county on November 24, 1975.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* I quite agree with the majority opinion and join it. The record in this case does not reflect the findings of fact or the analysis required to sustain the decision as a proper exercise of judicial discretion. *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1970).

I write separately to emphasize that the case law in this state for at least the last 25 years—and more recently, the statutes—have required the trial court, when imposing restitution as a condition of probation, to establish a reasonable schedule of payments for the probationer at the beginning of the probationary term.

500

In 1960 this court stated that in determining the amount of restitution as a condition of probation, it was "incumbent upon the trial court to individualize each case and give it careful and humane consideration." *State v. Scherr,* 9 Wis. 2d 418, 423, 101 N.W.2d 77 (1960).[1]

Later, in *State v. Garner,* 54 Wis. 2d 100, 105–106, 194 N.W.2d 649 (1972), and in *State v. Gerard,* 57 Wis. 2d 611, 619, 205 N.W.2d 374 (1973), this court cited with approval and adopted the American Bar Association Standards relating to probation (Approved Draft 1970), which instruct the trial court that "conditions requiring payment of . . . restitution . . . should not go beyond the probationer's ability to pay."[2]

In *Huggett v. State,* 83 Wis. 2d 790, 266 N.W.2d 403 (1978), this court relied on both *Garner* and *Gerard* in concluding that the goals of probation would be defeated if the trial court did not consider the defendant's ability to pay.[3] "[C]onditioning probation on the satisfaction of requirements which are beyond the probationer's control undermines the probationer's sense of responsibility." *Huggett, supra* 83 Wis. 2d at 798–99.

[1] The probation statute pertinent in *Scherr* was sec. 57.01(1), Stats. 1959, which provided that "[t]he court may, by order, withhold sentence or impose sentence and stay its execution and in either case place him on probation to the department for a stated period, stating in the order the reasons therefore, and may impose as a condition of such order or of continuing it in effect that he shall make restitution or pay the costs of prosecution or do both."

[2] The standards are reproduced in their entirety in *Huggett, supra,* 83 Wis. 2d at 796–97, n.3. *See also* sec. 301.1(1) of the Model Penal Code set forth in *Huggett, supra,* 83 Wis. 2d at 797 n.4, stating that courts must consider probationer's ability to pay in conditioning a restitution order.

[3] In *Huggett,* we said the validity and reasonableness of a condition of probation must be measured by the extent to which it effectuates the dual objectives of probation, namely, "the rehabilitation of those convicted of crime and the protection of the state and community interest." 83 Wis. 2d at 798, quoting *State v. Tarrell,* 74 Wis. 2d 647, 653, 247 N.W.2d 696 (1976).

The legislature appears to have codified the case law requiring the trial court to make an individualized determination of restitution based on the victim's loss and the defendant's ability to pay when it amended sec. 973.09 in 1979. Section 973.09(1)(b) instructs the trial court to set restitution to compensate the victim "to the extent possible" and to "specify the amount consistent with sub. (1m)."[4] Under sec. 973.09(1m)(a) the trial court, in determining the amount and method of restitution, is to consider "the financial resources and the future ability of the probationer to pay."[5] Furthermore, sec. 973.09(1m)(c) provides that the court "shall not establish a payment schedule extending beyond the maximum term of probation that could have been imposed for the offense. . . ."[6]

The legislature did not authorize the trial court to es-

---

[4] Sec. 973.09(1)(b), Stats. 1983–84, provides, inter alia:

"If the court places the person on probation, the court shall require restitution designed to compensate the victim's pecuniary loss resulting from the crime to the extent possible, unless the court finds there is substantial reason not to order restitution as a condition of probation. If the court does not require restitution to be paid to a victim, the court shall state its reason on the record. A court may require that restitution be paid to an insurer or surety which has paid any claims or benefits to or on behalf of the victim. If the court does require restitution, it shall specify the amount consistent with sub. (1m) and shall notify the department of justice of its decision if the victim may be eligible for compensation under ch. 949. . . ."

[5] Sec. 973.09(1m)(a), Stats. 1983–84, provides:

"In determining the amount and method of payment of restitution, the court shall consider the financial resources and future ability of the probationer to pay. The court may provide for payment of restitution to the victim up to but not in excess of the pecuniary loss caused by the offense. The probationer may assert any defense that he or she could raise in a civil action for the loss sought to be compensated by the restitution order."

[6] Sec. 973.09(1m)(c), Stats. 1983–84, provides, inter alia:

"The court shall not establish a payment schedule extending beyond the maximum term of probation that could have been imposed for the offense under sub. (2)."

tablish a restitution schedule and order probation for whatever period is necessary to pay the victim's total loss. Had the legislature intended to allow probation to continue ad infinitum and to use the probation system to collect full restitution regardless of the other goals of probation there would have been no point in the legislature expressly tying the payment schedule to the maximum original term of probation and to the probationer's financial resources and future ability to pay.

When the trial court establishes a restitution schedule that reflects the victim's loss, the probationer's financial resources and future ability to pay, the maximum original term of probation, and the goals of probation, then the probationer should be able to comply with the restitution payment schedule within the probationary term set by the trial court. If the probationer fails to comply with the restitution schedule established by the trial court pursuant to the standards set forth in sec. 973.09, the statute provides that the probationer shall not be discharged unless the court finds substantial reason not to continue the payment. Section 973.09(3)(b). [7]

To constitute a proper exercise of discretion and to avoid the problems posed in this case, trial courts must make a record regarding the imposition of restitution which sets forth the facts upon which the order is based

---

[7] Sec. 973.09(3)(b), Stats. 1983–84, provides:

"The clerk or the department, as applicable under sub. (1m), shall notify the sentencing court of the status of the ordered payments unpaid at least 90 days before the probation expiration date. If the clerk is acting under sub. (1m), he or she shall give the department the same notification. If payment as ordered has not been made, the court shall hold a probation review hearing prior to the expiration date, unless the hearing is voluntarily waived by the probationer with the knowledge that waiver may result in an extension of the probation period or in a revocation of probation. A probationer shall not be discharged from probation until payment of the ordered restitution, costs, attorney fees, fines and related payments under s. 973.05 has been made or the court determines that there is substantial reason not to continue to require payment."

and the rationale of the order.[8] The trial court failed to do so. For this reason I join the majority opinion.

WILLIAM G. CALLOW, J. (concurring). In this case we are asked to decide when failure to complete restitution constitutes cause for extension of probation under sec. 973.09(3)(a), Stats. Because I believe the majority fails to address this question adequately and fails to give full recognition to victims' rights, I write separately.

When a person is convicted of a crime, sec. 973.09, Stats., "gives the court the discretion to stay the sentence, place the defendant on probation, and impose any conditions which appear reasonable and appropriate." *State v. Gerard*, 57 Wis. 2d 611, 618–19, 205 N.W.2d 374 (1973). Probation, therefore, is not a matter of right; it is a privilege. *Id.* at 619. Its purpose is to rehabilitate those convicted of a crime and to protect the state and community interest. *Huggett v. State*, 83 Wis. 2d 790, 798, 266 N.W.2d 403 (1978).

One permissible and appropriate condition of probation is restitution. *Gerard*, 57 Wis. 2d at 619. "The old saw 'crime does not pay' should become a legal reality whenever possible. Society and the law should require that the 'criminal shall repay.' . . . [E]very reasonable effort should be made to require the defendant to make restitu-

---

[8] According to the rules promulgated by the Department of Health and Social Services, the department stands ready to assist the court in arriving at an appropriate restitution schedule in light of the circumstances of each case. HSS 328.07 states that if a court so orders, the department shall document the nature and amount of a victim's pecuniary loss, and recommend an appropriate payment schedule to the court. HSS 328.27 requires the department to perform a presentence investigation to provide the court with "accurate and relevant information upon which to base its sentencing decision." This information is to be compiled in a report which includes a summary and conclusions. HSS 328.27(3)(b). Agents are directed to suggest a tentative treatment plan which should include any recommendations about restitution. HSS 328.27(3)(d).

tion and to recognize that victims should not suffer financial loss." *Huggett,* 83 Wis. 2d at 806 (Callow, J., dissenting). This must apply when the victim is an individual, as in a robbery case, and when the victim is society, as in a welfare fraud case.

We noted in *Huggett* that by imposing restitution as a condition of probation, a court "can aid an offender's rehabilitation by strengthening the individual's sense of responsibility. The probationer may learn to consider more carefully the consequences of his or her actions." *Id.* at 798. A probationer who successfully completes probation and makes restitution will have earned society's respect and will have tangible evidence of his or her ability to alter old behavior patterns and to lead a law-abiding life. *Id.* By imposing restitution as a condition of probation, the court also can further the community's interest in having the victims of crimes made financially whole. *Id.*

In determining the amount of restitution, however, the court should not establish a restitution obligation which exceeds the probationer's ability to pay. *Id.* at 797. An excessive restitution requirement may not serve the rehabilitative function of probation. Establishing a goal which cannot be met creates frustration rather than instilling in the probationer a sense of responsibility. In addition, an excessive restitution obligation can create problems for the court. A court can expect that a probationer saddled with an excessive restitution obligation will fail to complete restitution during the initial term of probation, forcing the court to decide the question of probation extension, or provoking the probation department to attempt revocation of probation. We addressed this question several years ago in *Huggett,* and we are asked to address it again in this case.

The probationer in *Huggett* pleaded guilty to theft for receiving over $6,000 in public assistance funds, while neglecting to report income as required by statute. *Id.* at 791–92. The trial court imposed a five-year sentence but

stayed execution of the sentence and placed Huggett on probation for five years. *Id.* at 792. "The only condition of probation specified in the trial court's judgment was that she 'make payments in such manner as the Department of Health and Social Services shall direct as follows: Restitution: $6,473.96; costs: $59.00.' " *Id.*

Shortly before the end of the five-year probationary period, Huggett signed a waiver form. The form was entitled "Waiver of Court Appearance and Order of Court," and "was intended to fulfill the statutory requirement that a court may, for cause, order extension of probation." *Id.* at 793–94. In Huggett's case, the "cause" for extending probation was her failure to fulfill her restitution obligation. In nearly five years of probation, Huggett had repaid only $675. *Id.* at 795. The court order extended Huggett's probation for two years. *Id.* at 794.

Six months into the extended probation period, Huggett was charged as an absconder. She waived her probation revocation hearing. Her probation was revoked in February, 1976. Shortly thereafter she began serving her five-year sentence. *Id.* at 795.

Huggett moved for postconviction relief. The trial court denied relief, concluding "that Huggett waived her appearance at the extension hearing and that the revocation of probation 'was for rule violations other than for failure to pay restitution.' " *Id.*

On appeal, we concluded "that the real controversy . . . has not been fully tried, namely whether the trial court had cause to extend probation. . . . [T]he issue is whether Huggett's failure to make full restitution was adequate cause for extension." *Id.* at 802. Even though Huggett had signed a waiver form, had never requested a hearing to modify the restitution requirement, and had paid only $675 of the amount she owed in restitution, this court concluded that the record did not adequately document the existence of "cause." Accordingly, the court re-

manded the case for a hearing to determine whether there was cause to extend probation.

I dissented in *Huggett* for two reasons. First, I believed the majority's holding would be detrimental to indigent defendants. When the trial court imposes restitution as a condition of probation, I said "[t]he trial judge and the defendant should . . . anticipate that the defendant's failure to meet the restitution condition of probation will likely result in revocation of probation and a return of the defendant to court for the imposition of the [prescribed sentence]." *Id.* at 805. By creating a rule which allows defendants who are unable to fulfill their restitution obligations to be released from probation, the *Huggett* majority essentially reduced the probability that the sentence would be imposed and reduced a major incentive for fulfillment of restitution. This approach discourages trial judges from granting probation in some circumstances. For example, a trial judge likely will grant probation conditioned upon restitution to a wealthy defendant whose ability to pay is certain. A trial judge likely will not grant probation conditioned upon restitution to an indigent defendant whose ability to pay is suspect, however, because under the reasoning of *Huggett* the defendant can escape serving any sentence even if the defendant fails to fulfill the restitution obligation by demonstrating other evidence of rehabilitation.

Second, I dissented because I believed the defendant should have the burden of asserting that the restitution which the court establishes exceeds the defendant's ability to pay. I said,

> "[when] the defendant requests probation at the time of sentencing and accepts restitution as a condition of probation, restitution [should] be presumed to be within the ability of the defendant to pay until the defendant petitions the court for a hearing on the reasonableness of the order for restitution. . . . If the defendant chooses to consent to an extension of probation

507

because the restitution condition . . . has not been met, the court may approve the extension without hearing." *Id.* at 806.

Shortly after our decision in *Huggett,* the legislature addressed the issue and modified the statutes relating to restitution as a condition of probation. Two changes are particularly relevant to the majority and dissenting opinions in *Huggett.* First, the legislature added sec. 973.09(3)(b), Stats., which provides in relevant part that "[a] probationer shall not be discharged from probation until payment of the ordered restitution . . . has been made or the court determines that there is substantial reason not to continue to require payment." This language specifically qualifies the language of sec. 973.09(3)(a), which served as a basis for the majority decision in *Huggett.* Section 973.09(3)(a) states: "Prior to the expiration of any probation period, the court, for cause and by order, may extend probation for a stated period or modify the terms and conditions thereof." While the majority in *Huggett* read sec. 973.09(3)(a) to presume probation should cease and to place a burden on the state to show cause for extending probation, sec. 973.09(3)(b) specifically directs that probation should be extended unless the probationer can prove there is substantial reason not to continue to require payment. This modification demonstrates the legislature's increased emphasis on a victim's right to compensation and a defendant's fulfillment of the restitution obligation.

Second, the legislature added sec. 973.09(1m)(a), Stats., which provides that "[i]n determining the amount and method of payment of restitution, the court shall consider the financial resources and future ability of the probationer to pay. The court may provide for payment of restitution to the victim up to but not in excess of the pecuniary loss caused by the offense." While this section also provides that the court could order payment of costs, the

legislature recognized the importance of restitution by saying: "The court shall consider the interest of the victim in receiving restitution when determining whether to order payment of costs." *Id.* To facilitate restitution we often have emphasized that trial courts should determine a probationer's ability to pay when imposing restitution. *See Huggett,* 83 Wis. 2d at 800; *State v. Gerard,* 57 Wis. 2d at 621. Because the legislature now has placed increased emphasis on restitution, the importance of a court's initial determination of the appropriate amount of restitution has increased as well. The enactment of sec. 973.09(1m)(a) demonstrates the legislature's awareness of the importance of the initial restitution determination.

Taken together, secs. 973.09(1m)(a) and 973.09(3)(b), Stats., alleviate many of the concerns I expressed in my dissent in *Huggett.* Under sec. 973.09(1m)(a), the court must consider the defendant's financial resources and future ability to pay when imposing restitution. A presentence investigation report to the court should set forth the defendant's financial situation, and the state and defendant should be prepared to offer to the court a realistic restitution proposal. As an alternative, in the absence of a presentence report and recommendations by the parties, if the trial court establishes restitution as a condition of probation, the court should direct the probationer and the probation officer to return to the court within thirty days with a proposed payment plan which is feasible in light of the probationer's present and future ability to pay. The report should be made available to the state and to the victim. If the sum of the proposed payments for the entire term of probation appears insufficient to fulfill the restitution which the court previously assessed, the court could modify the amount of restitution, or could indicate that it will utilize the statutory provisions for extension, depending upon the defendant's financial circumstances at the end of the probationary period. Because the probationer is involved in structuring a feasible payment plan,

it makes sense that under sec. 973.09(3)(b) the probation should be extended if restitution is not completed according to the plan, unless the probationer establishes substantial reason for discontinuing payment.

This prospective approach serves the interests of the victim, the probationer, and society. The victim receives restitution, the probationer develops responsibility, and society does not have to incarcerate the defendant. Further, it treats all defendants equitably, regardless of their wealth, offering indigent defendants the same opportunity for probation as wealthy defendants. By working together with this prospective approach, the probation officer, the trial judge, and the probationer can avoid the miscommunication, evidenced in this case and in *Huggett*, which can result in subsequent extensions of probation, release from probation prior to fulfillment of restitution, or revocation of probation.

Turning to the instant case, the facts are similar to those in *Huggett*. In 1975 Davis was found guilty of welfare fraud. She was placed on probation for five years, with probation conditioned upon her payment of $1,467 in restitution, in the manner directed by the Department of Health and Social Services (Department). When Davis failed to satisfy her restitution obligation in the five-year probationary period, the court extended her probation for one year. When Davis still had not completed payments, the court extended her probation for two more years. Finally, in 1983, after eight years had expired, the court extended Davis's probation for two more years, again noting that she had not fulfilled her restitution obligation. This appeal focuses on the trial court's most re :ent decision to extend probation for two years.

Although the facts of this case are similar to those in *Huggett*, the question we must answer here was left unanswered in *Huggett*: When is failure to complete restitution cause for extending probation under sec. 973.09(3)(a), Stats.? The majority opinion fails to address this question

510

adequately, making only occasional references to factors which might affect the cause analysis.

To determine whether failure to complete restitution is cause for extending probation under sec. 973.09(3)(a), Stats., the majority should return to *Huggett.* The *Huggett* majority concluded that the issue of "cause" for extension of probation had not been fully tried, and remanded the matter for a hearing to determine whether there was cause to extend probation. In dicta, the *Huggett* majority described two possible approaches for determining whether cause exists. Under the first approach, a court may find cause for extending probation if additional restitution would promote the objectives of probation *and* if the probationer can make more than negligible payments. Using the second approach, a court may not find cause if the probationer lacks the capacity to pay *and* has demonstrated a good faith effort to pay during probation.

In its opinion in this case, the majority does not use either of these approaches with any degree of clarity. Apparently focusing on the first approach, the majority makes reference to several facts from which it concludes that further restitution will not promote the objectives of probation because the restitution already paid sufficiently promoted the objectives of probation. Shifting to the second approach, which it quotes on page 16 of the slip opinion, the majority highlights several facts which purportedly demonstrate Davis's good faith effort to repay the debt, but neglects to mention that Davis still possesses the capacity to pay more than negligible amounts toward restitution and, in fact, offered to execute a wage assignment.

Purportedly applying sec. 973.09(3)(b), Stats., the majority also concludes that the trial court's extension of probation constitutes an abuse of discretion because the extension was intended solely to assure that the probationer would complete restitution and because the record "teems with substantial reasons" for discontinuing pay-

ments. I disagree with both rationales. First, the statute clearly directs courts to extend probation to assure that probationers complete restitution. Second, I do not believe the record "teems with substantial reasons" for discontinuing payments. Rather, I believe reasonable persons could disagree about whether Davis made a good faith effort to complete restitution.[1]

The majority not only fails to address adequately the question of "cause," it also ignores the legislature's enactment of sec. 973.09(3)(b), Stats., when it declares "the criminal justice system should not be employed to perform the functions of a collection agency," Majority opinion at p. 497, and concludes that this case is "of significant precedential importance ... because it demonstrates the improper use of the criminal process to collect what eventually became no more than a civil debt." Majority opinion at p. 499. The struggle to gain legislative and judicial recognition of victims' rights has made substantial progress. The majority's assertion that victims must seek a civil remedy deals victims' rights a severe blow and defies legislative directive and common sense. The enactment of sec. 973.09(3)(b), with its presumption that probation should continue until restitution is complete, demonstrates that the legislature intends to use the criminal justice system to make criminals pay monetary restitution to the victims of their crimes. The majority of the court may not believe this is an appropriate use of state resources, but that is a legislative decision, not a judicial decision. Further, extending probation because a defendant has failed to complete restitution does not violate any constitutional prohibitions. "Indeed, such an extension appears to

---

[1] According to the majority, the record clearly showed that Davis was paying the maximum possible toward restitution. *See* majority opinion at p. 496. The record indicates, however, that Davis was contributing $100 per month to church. Although charitable giving is meritorious, it is substantially less meritorious when the contribution is made from funds which rightfully belong to another.

512

have been contemplated by the Supreme Court when it required that alternative[s] [to incarceration] be considered, specifically, 'extending the time for payments.' *[Bearden v. Georgia, 461 U.S. 660, 672 (1983)]." See United States v. Ortiz, 733 F.2d 1416, 1418 (10th Cir. 1984).*

In this case the trial court imposed restitution in the amount of $1,467. Although our case law, even prior to sec. 973.09(1m)(a), Stats., instructed judges to assess a probationer's ability to pay and to impose a feasible payment plan, neither the trial court nor the Department assessed whether Davis had the financial capability to satisfy payment of this amount during the five-year period of probation. Davis admittedly made only nominal payments during the early years of probation, but during that period she was absent from work twice for maternity leave. She testified that the Department never told her to pay more toward her obligation. It was not until 1980 that the probation authorities attempted to determine the amount Davis could afford to pay in light of her income and her expenses.

I believe cause exists for extending probation whenever a probationer fails to complete restitution and has the capacity to continue to make restitution payments. In this case Davis clearly possessed the capacity to make further restitution. I also believe, however, that restitution is an inadequate condition of probation as a matter of law when the trial court fails to specify a reasonable payment plan. Clarity is fundamental to any payment plan. Trial courts should structure feasible payment plans and clearly explain the requirements of the plan to the probationer so that all parties have the same expectations. When a trial court delegates its authority to formulate a reasonable payment plan to the probation authorities, the trial court should not discipline the probationer for resulting ambiguities and misunderstandings. Davis's failure to complete the required restitution during her

513

initial term of probation was attributable largely to the failure of the court and the Department to establish a structured payment plan, compatible with her ability to pay, through which she could satisfy her restitution obligation. Because the trial court failed to delineate a reasonable payment plan, restitution was an inadequate condition of probation, and Davis's failure to complete restitution cannot be cause for extending her probation even though she has the ability to continue payments. Accordingly, I concur.

I am authorized to state that Justice DONALD W. STEINMETZ joins in this concurring opinion.

STEINMETZ, J. *(concurring).* I join Justice Callow's concurring opinion but also write separately. I agree with the tenor but not the temper of the majority decision. I believe it ignores what happened here and what frequently occurs in probation-restitution cases. The trial court took one position on restitution and the probation officer took another position. The judge has the sole responsibility for determining the disposition after a guilty finding.

The trial judge did not set forth a schedule or method for making restitution in his original order. However, he did set restitution at $1,467 with "payments in such manner as the department shall direct." Probation was originally imposed for five years on November 24, 1975.

Almost five years elapsed before the judge again saw the defendant to consider the probation agent's request for a one-year extension of probation. In the meantime, the defendant's husband had been sentenced to prison in 1978. Thereafter, the defendant was the sole support of herself and her three children, ages four, nine and eleven. At the extension hearing, the judge was informed that the defendant had paid only $105 during the first two years of probation, during which time her husband was not incarcerated. That amounts to about $4.38 per month.

There is no explanation why the probation officer permitted Davis to only pay $4.38 per month toward a $1,467 obligation which was to be paid in five years. At that rate, only $262.80 would have been recovered in five years. The probation department's initial duty, in light of the judge's order for full restitution in five years, was to establish a payment schedule for full restitution or seek a modification of the amount of restitution based on the defendant's ability to pay.

It was only after five years had passed that the defendant's income and expenses, and therefore her ability to pay restitution, were analyzed by the probation department. Therefore, because of the department, the defendant made little progress toward satisfying her restitution obligation. Then, when the court extended probation for one year in 1980, the department ordered the defendant to pay $20 per month on the basis of a budgeting counselor's analysis. The department asked for an extension that would only collect another $240 during the one-year extension. The department's schedule still made defendant fall far short of accomplishing full restitution as ordered by the court. Nonetheless, the department did not advise the court of this fact.

The department's only authority concerning restitution was to establish a schedule of payments. The court ordered the amount of restitution. If the department was aware that full restitution could not be accomplished because the defendant lacked the ability to pay, then the department should have made that fact known to the judge early in the probationary period. If that been done during the first five years of probation, or even during the first one-year extension, the judge would have been able to order charity work as an alternative or ordered Davis to secure a second job, after determining the effects of such an order on the well-being of the defendant's children. In this regard, I agree that $2 per hour credit for

515

charity work is woefully inadequate and any amount less than the minimum wage would be arbitrary.

In 1981 the defendant returned to court and probation was extended for another two years even though the probation officer recommended that supervision be discontinued. Again in 1983, the judge extended probation another two years despite the renewed recommendation that probation be discontinued. Certainly, at those times, and under conditions of such conflict, the department should have been impressed that the judge who sets the conditions of probation, not the department, was going to insist on full restitution before discharge of the defendant.

The entire history of this probationary matter shows a contest of wills between the judge who has the authority to order restitution and the department which has the duty to collect the restitution or periodically inform the judge of the impossibility of success under the circumstances. If the department informs the court of the impossibility of paying restitution, then the judge with the assistance of the department can set available imaginative alternatives to the payment of money from defendant's income. Here, a conflict developed between the authority of the court and the probation agent, which did little to serve the judicial system's necessary cohesiveness.

In *Huggett v. State,* 83 Wis. 2d 790, 800, 266 N.W.2d 403 (1978), we stated: "We have previously emphasized the importance of the trial court's determining a probationer's ability to pay in imposing restitution." I believe that investigation as to the ability to pay can and should be assigned to the department with the ultimate decision to be made by the judge and formalized in an order near the commencement of probation.

Under sec. 973.09, Stats., effective 1979, I believe the judge, consistent with *Huggett,* may assign the obligation of investigation as to the defendant's ability to pay to the department with a report to the court and ultimately an

order of the court. Intertwined with the defendant's ability to pay is the total amount of restitution that should be ordered. This may not necessarily be the same as the total amount of loss or damages sustained, even though that should be the preferred aim of restitution.

The department was responsible for the lack of supervision over the defendant during the first two years of probation. It is apparent from this record that the judge believed full restitution was essential for rehabilitation of the defendant. He did not have the full cooperation of the department in reaching that result.

At the last hearing, eight years after probation was imposed, the judge was informed through the department's report that the restitution had been made except for $298.48. It appears that degree of success was accomplished by the judge's persistence because the department was willing to not collect any more in 1981 when only approximately $345 of $1,467 had been paid by the defendant. At that time, the department recommended that probation be terminated.

Section 973.09(3)(b), Stats., changed the test for extending probation when the defendant fails to complete restitution. Under the new law, probationers must establish substantial reason not to extend probation when restitution is not completed. This approaches collection by the use of probation, which *Huggett v. State,* 83 Wis. 2d at 804, decried as not permitted by the former statute. In this regard, the majority does state that continuation of probation in this case in order to collect restitution alone is an abuse of discretion. Whether this result is mandated by this court's previous decisions or the new statute is not discussed nor resolved by this case because the judge did not refer to or rely on the new statute in the 1983 hearing, if it applied on these facts.

I would reverse the probation extension order based on the majority's application of the test in *Huggett.* I would wait for another case to resolve the possible conflict

between *Huggett* and the new sec. 973.09(3)(b), Stats. Here, there was not cause to extend probation, based on the length of probation, the neglect of the department in the early years of probation, and the later efforts by the judge to collect restitution that varied or added to his original order. Changes in probation orders are permissible but matters of notice and reasonableness must be considered.

LOUIS J. CECI, J. *(dissenting).* Between January 1, 1972, and April 1, 1974, while earning $14,672.79, the defendant cheated the taxpayers of Milwaukee county out of $1,237.00. That felony is what the jury found she committed and, simply stated, that amount is what the trial court ordered her to pay. Yet the majority now lambasts the trial court for the defendant's failure to make full restitution.

When first placing her on probation, the trial judge specified that, as a condition of probation, she make restitution. She did not, and the court properly extended her probation. I agree with Justice Callow's concurrence to the extent that cause exists for extending probation whenever a probationer has the capacity to make full restitution, yet fails to do so. The record indicates that at the November 15, 1983, hearing, the defendant was earning $9.50 per hour, and her husband had a net earning income of $400.00 per month. They had two cars and budgeted $145.00 for church tithes and $50.00 for entertainment, among other things. Davis clearly had the capacity to make further restitution in this case. In addition, there is no substantial reason not to require further restitution payments from the defendant. Sec. 973.09(3)(b), Stats.[1]

---

[1] This subsection states in relevant part: "A probationer shall not be discharged from probation until payment of the ordered restitution . . . has been made or the court determines that there is substantial reason not to continue to require payment."

518

Further, I find no abuse of discretion in the trial court's failure to set a more detailed restitution plan. The majority opinion evidences a disappointing lack of appreciation and concern for the realities of the operations of the overworked criminal trial court system in Milwaukee county. Milwaukee county has 37 circuit court trial judges; the weighted caseload analysis of the director of state courts shows a need for 48.4 judges. The state has not seen fit to supply these courts with an adequate support staff of either secretaries, assistants, graduate law clerks, or interns. Yet the majority opinion now will require that the trial judge get involved in the analysis of what, when, where, how much, and how often shall the defendant make payments toward the satisfaction of the court-ordered restitution. The trial court's failure to personally draft a restitution repayment plan does not constitute abuse; more properly, the fact that the trial court left that duty to the probation department reflects the facts of a heavy trial caseload.

I must also comment about the majority's preclusive reading of the trial court's opening remark at the November 15, 1983, hearing. Majority opinion at pp. 491, 492. Obviously, the trial court had read the record and the probation report and had been apprised of the posture of the case before it. The majority's extrapolation that the trial court thus made known that it would not consider other circumstances is unfounded.

I dispute the majority's characterization of the defendant's restitution conduct as being an exhibit of good faith. The majority categorically states at p. 497 of the opinion, "We see no reason why the criminal justice system in these circumstances, *where Davis has repeatedly and continuously demonstrated good faith, should not relinquish its hold upon Davis.*" (Emphasis added.) This remarkable premise and piece of confabulation need not be directly controverted by me, other than to suggest that the probation agent's report filed with the court on November 17,

519

1980, be reread. I quote in full the last paragraph of page 2 of that report:

> "Miss Davis' payments during the first two years of supervision cannot be described as a good faith effort. However, there has been more of a good faith effort from that time up until the present. Even though Miss Davis does not have the ability to make substantial payments toward court obligations on a monthly basis in the future, it is felt that *her probation should be extended mainly because there was not a good faith effort overall during the probation term. Since there is a substantial amount of restitution owing, it is also felt that Miss Davis should have the opportunity to show more convincingly a good faith effort to make restitution to the proper claimant in this case. For this reason, it is felt that a remittance is inappropriate.* Also, since this agent began supervising her case in November of 1978 approximately there have been no serious adjustment problems on supervision. That is, Miss Davis maintains steady employment, a suitable place of residence, and provided for her family as best she could." [Emphasis added.]

Moreover, it is curious how the majority, after having read the emphasized portion of the passage, concludes that "[i]t was only . . . [an] apparent lack of effort during the first two years of supervision that impelled the probation agent to suggest that the court continue Davis on probation." Majority opinion at pp. 489, 490.

The majority opinion cites sec. 973.09(3)(b), Stats., and conveniently ignores sec. 973.09(3)(a), which reads as follows: "Prior to the expiration of any probation period, the court, for cause and by order, may extend probation for a stated period or modify the terms and conditions thereof." It is obvious that the trial court had this section in mind when it insisted that the defendant fulfill the original terms of probation and make full and complete restitution.

Because the trial court did not abuse its discretion and because the defendant certainly has the ability to make further restitution payments, I dissent.